STATE FARM MUT. AUTOMOBILE INS. CO. *v.* BASS
(two cases).

(*Jackson*, April Term, 1951.)

Opinion filed June 16, 1951.

Moss & Benton, of Jackson, for plaintiff in error.

Heathcock & Elam, of Union City, for defendants in error.

Mr. Justice Tomlinson, delivered the opinion of the Court.

State Farm Mutual Automobile Insurance Company, who is plaintiff-in-error here, for a consideration of $33.85 issued an insurance policy to a man named Spalding, agreeing to pay on behalf of Spalding in accordance with the terms of the policy all sums within specified maximums which Spalding became obligated to pay by reason of liability imposed upon him for bodily injury or property damage (being coverages A and B in the policy) inflicted upon third parties by reason of the operation on the public highway of a certain "truck type tractor" described in the policy.

In the face of this policy it is provided that: "This policy does not apply—under coverages A and B while the automobile, if of the commercial or truck type, is used for the towing of any trailer".

There was an endorsement attached to the policy reading as follows: "In consideration of the payments made by the insured for this policy, it is hereby agreed by the State Farm Mutual Automobile Insurance Company that this policy is extended to cover while the automobile described in the policy is used to tow or propel the trailer described below:"

The endorsement then described the trailer referred to in the above quotation as being a Nabors semi-trailer of 3½ tonnage capacity. The policy disclosed that an additional premium of $8.46 attached by reason of the extension of the coverage of this tractor while towing the above described trailer.

During the contract life of this policy the tractor described therein was involved in a traffic accident while being operated upon a public highway of this State. As

a result of that accident Mr. and Mrs. Bass, the defendants-in-error, received certain property damages and bodily injuries for which they sued Spalding, the named insured in the aforementioned policy.

At the time of the aforesaid accident for which the Bass damage suit was instituted the tractor described in the policy was not towing the 3½ ton trailer mentioned in the endorsement to the policy. It was towing a Fruehauf trailer having a capacity of 10 to 12 tons, and was ten feet longer than the Nabors described in the policy endorsement.

State Farm Mutual Automobile Insurance Company declined to defend the damage suits on the theory that its aforementioned policy did not cover the tractor described therein while it was towing this trailer that had been substituted by Spalding for the trailer described in the policy.

Mr. and Mrs. Bass recovered substantial judgments against Spalding, the insured. Executions were returned nulla bona. Then Mr. and Mrs. Bass brought the suits in the case at bar against the insurance company by reason of this policy for collection of the judgments obtained against the insured, Spalding.

The Circuit Judge heard the case without the intervention of a jury and held that under the policy the insurance company was liable to pay these judgments. The insurance company has appealed to this Court. The facts were stipulated.

In the accident which resulted in these judgments against the insurer the trailer was not struck, the collision being between the tractor and the Bass automobile. In this connection, a question submitted in behalf of Mr. and Mrs. Bass is whether the tractor was within the cover-

age of the policy because of the fact that the trailer was not struck. That question was determined in *Waddey* v. *Maryland Casualty Co.*, 171 Tenn. 112, 117-118, 100 S. W. (2d) 984, 109 A. L. R. 654, wherein it was held that if the tractor was towing a trailer not permitted by the terms of the policy, then the insurer would not be liable without reference to whether the towing of the trailer was causally connected with the accident.

The policy provides that the word " 'automobile' wherever used in this policy shall mean the motor vehicle, trailer, or semi-trailer described herein and equipment usual to that type of automobile while attached thereto . . .''. It follows that the tractor and the attached trailer are defined by this policy as constituting one vehicle. So the question is whether this vehicle (made up of the tractor and trailer in question) was the vehicle insured by this policy.

In considering the question of whether this vehicle was the vehicle insured by the policy there becomes controlling two clauses in the policy which we will call "substitution of automobile" clauses. Since the definition given by the policy to an automobile includes an attached trailer it will necessarily follow that if the substitution of the trailer involved in this accident for the trailer described in the policy comes within the provisions of either of these two substitution of automobile clauses under the facts of this case, then the vehicle involved (including this substituted trailer) was insured against the accident which happened.

The first of these two substitution of automobile clauses reads as follows: "If the named insured disposes of the automobile insured hereunder, and purchases or otherwise acquires title to an automobile of the same type to

replace it, this policy will automatically terminate with respect to the described automobile and will automatically extend to cover the new automobile provided the company is notified thereof within thirty (30) days of such purchase or acquisition and provided the named insured pays any additional premium that may be required because of such change upon demand.''

The stipulated facts which Mr. and Mrs. Bass say bring their case within the provisions of the above clause are these:—Spalding heard of an opportunity to make a contract to haul lumber from Mississippi to Illinois and he decided to investigate that matter with the view of making such contract. At a place of business in his home town in Missouri, where this policy was issued, he learned there was for sale the ten to twelve ton trailer that was attached to the tractor at the time of the accident. That trailer was more suitable for the long lumber haul than a 3½ ton trailer mentioned in the policy. He arranged with the dealer of this large trailer to leave the 3½ ton trailer at the dealer's while taking the 10 to 12 ton trailer to the place in Mississippi to which he was going to investigate the contract about hauling lumber from Mississippi to Illinois. The language of the stipulation is that ''trailer was turned over or loaned to Spalding for the trip to Coffeeville, Mississippi''. ''It was understood that on his return Spalding would either purchase the Fruehauf trailer at the agreed price, (plus Spalding's trailer) or return the trailer if he could not use it . . .''. Spalding left his trailer described in the policy with the owner of the substituted trailer ''pending his return and the completion of the purchase of or the return of the Fruehauf trailer''. Spalding's trailer ''was not to be used and was not used while Spalding was away''.

The accident occurred while Spalding was on his way to investigate that contract. He thereupon returned home, and returned the Fruehauf trailer involved in the accident to the owner. He neither purchased that trailer nor disposed of his trailer (the one described in the policy).

Under the substitution clause above quoted the insured must dispose of the trailer mentioned in the policy and he must purchase or otherwise acquire title to the trailer substituted for the one disposed of. Spalding neither disposed of the trailer mentioned in the policy, nor did he purchase or otherwise acquire title to the trailer which he substituted for that trailer. The transaction amounted to nothing more than a loan of the substituted trailer to the insured with the idea upon the part of its owner and of the insured that he, the insured, might purchase it.

Unquestionably, therefore, the transaction above described was not a substitution which came within the above quoted substitution clause of the policy. To so hold would amount to nothing less than the making for the parties of a contract which they did not make for themselves.

The conclusion stated is in accord with the conclusion of the California Court in the case of *Dean* v. *Niagara Fire Insurance Company*, 24 Cal. App. 2d Supp. 762, 68 P. (2d) 1021. In that case the policy authorized the substitution of a newly "acquired" automobile for the one mentioned in the policy. Though the facts were disputed, there was some evidence that the insured was trying the new car out with a view of buying it at the time of the accident. In view of that evidence the Court reversed the judgment against the insurance company and remanded the case because the trial judge had refused

to instruct the jury that if they found that at the time of the accident the plaintiff was simply trying the car out "with an idea of its possible purchase", then its verdict should be for the insurance company. This was, of course, because that did not amount to an acquiring of the substituted automobile.

A like conclusion in a policy containing a similar provision was reached by the Alabama Court in *Aetna Casualty & Surety Co.* v. *Chapman*, 240 Ala. 599, 200 So. 425.

We find no case holding contrary to the above under a similar substitution or automatic insurance clause, although Mr. and Mrs. Bass contend that the New Hampshire case of *Merchants Mutual Casualty Co.* v. *Lambert*, 90 N. H. 507, 11 A. 2d 361, 362, 127 A. L. R. 483 holds to the contrary. The substitution clause involved there provided that if the insured acquired ownership of another automobile the policy would apply to such newly acquired automobile, if it replaces the one described in the policy. It was contended by the insurance company that inasmuch as the insured had not disposed of the older car mentioned in the policy this substitution clause did not apply to the newly acquired car. The Court held to the contrary and in so holding said this: "The plaintiff, if it had seen fit, might have inserted a provision that the insurance should not attach to the replacing car until the insured had parted with the ownership and possession of the replaced car, but in the absence of any such provision in the policy, these factors of the situation were properly regarded by the trial court as indecisive."

In the case at bar the substitution clause of the policy does impose as a condition of substitution that the insured dispose of the automobile described in the policy. There-

fore, the above quoted statement of the Alabama Court seems to conclusively support the conclusion we have reached.

The second of the two substitution of automobile clauses in the policy involved here is as follows: "While the described automobile is withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction, such insurance as is afforded by this policy for bodily injury liability and for property damage liability with respect to such automobile applies with respect to another automobile not owned in full or in part by the insured while temporarily used as a substitute for such automobile."

It is stipulated that the substituted trailer was "in a better state of repair" than the much smaller trailer mentioned in the policy and, as stated in behalf of Mr. and Mrs. Bass, the substituted trailer was more suitable for the contemplated long lumber haul from Mississippi to Illinois than was this smaller trailer. That, however, can by no stretch of the imagination logically be considered a "breakdown, repair, servicing, loss or destruction" of the smaller trailer. Therefore, the substitution of the large trailer did not come within the provisions of this second substitution of automobile clauses.

Finally, it is said that the provisions of the policy with reference to the Financial Responsibility Law of Missouri renders the plaintiff-in-error, insurance company here, liable under the policy for the payment of the judgments obtained by Mr. and Mrs. Bass.

The policy provision upon which this insistence is based is this: "Such insurance as is afforded by this policy for bodily injury liability or property damage

liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, *to the extent of the* coverage and limits of liability required by such law.'' (Emphasis supplied.)

The Motor Vehicle Responsibility Law of Missouri contains this provision: ''The liability of the insurance carrier with respect to the insurance required by this Act shall become absolute whenever injury or damage *covered by said* motor vehicle liability *policy occurs.*'' (Emphasis supplied.) R. S. Mo. 1949, Section 303.220(2) (a).

The policy provision as to the Financial Responsibility Law refers, of course, to the automobile that is insured by the policy. If the person insured is driving a different automobile then that policy does not apply to such different vehicle. Any damage then occurring would, of course, not be covered by the policy. The Motor Vehicle Responsibility Law would in that situation not apply because it contemplates liability only for an injury or damage that is covered by the policy.

As heretofore pointed out, this policy defines the automobile insured as meaning the tractor therein described and the attached trailer therein described or a tractor or trailer, or both, substituted for that tractor or trailer in accordance with the two automobile substitution clauses of the policy. As also hereinbefore pointed out, the trailer which was substituted in the instant case for the trailer described in the policy was not a substitution which came within the provisions of either of the two automobile substitution clauses. Hence, the automobile which was involved in this accident with Mr. and Mrs. Bass was not the automobile covered by the policy.

For the reasons stated, it is necessary to reverse the judgment of the Circuit Court and dismiss the suits of Mr. and Mrs. Bass.

NEIL, Chief Justice (dissenting).

I am unable to agree with the majority opinion in these consolidated cases because the conclusion is based upon a strict rather than a liberal construction of the policy. The second of the substitution clauses, copied in the majority opinion, in my opinion, amounts to a coverage of the tractor and the substituted trailer. It provides: "While the described automobile is withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction, such insurance as is afforded by this policy for bodily injury liability and for property damage liabilty with respect to such automobile applies with respect to another automobile not owned in full or in part by the insured while temporarily used as a substitute for such automobile."

Giving to this clause a liberal construction it is my view that the causes for withdrawal of the 3½ ton trailer and substitution temporarily of the larger one, is not a matter which is determinative of the rights of the parties. The accident would have happened regardless of whether the trailer was "withdrawn from normal use because of its breakdown, repair, servicing", etc., or if it only remained idle while another trailer was being used in its place for this particular trip. The risk to the insurance company was the same. If there was any added risk while using the substituted trailer it was negligible. The insured had every right to assume that he was protected under the policy.

The contention that the policy holder was not the owner of the substituted trailer, and for this reason there was no coverage, is in my opinion wholly insufficient to excuse the company from liability. While it is true the owner of the truck and holder of the policy had no legal title to the substituted trailer it cannot be doubted but that he was exercising limited ownership and control over it. Moreover he would not have been the owner had the trailer for which it was substituted been in a garage for servicing and repairs in which event liability admittedly would have attached. Under a liberal construction of the policy this defense should not be available to the insurance company. When it is considered that the legislative policy of the State requires owners of motor vehicles to carry liability insurance, and the policy has been taken out and paid for in full compliance with the law, the company should not be allowed to escape liability to one who was not a party to the insurance contract and who is entitled to be thus indemnified when the holder is insolvent.

For the above reasons I respectfully dissent.