**WESTERN CASUALTY & SURETY CO.**
**v. NORMAN et al.**

No. 13468.

United States Court of Appeals
Fifth Circuit.

May 27, 1952.

Vardaman S. Dunn, Jackson, Miss., for appellant.

Floyd W. Cunningham, Booneville, Miss., Thomas Fite Paine, Aberdeen, Miss., for appellees.

Before HOLMES, BORAH, and RUSSELL, Circuit Judges.

68

RUSSELL, Circuit Judge.

The primary question presented by this appeal is whether the operation of an Oldsmobile automobile involved in a fatal collision was at the time within the coverage of a public liability policy issued by the appellant insurer. The correct answer depends upon whether the facts are sufficient to support the finding which the trial court made, that at the time of the collision the Oldsmobile was being used as a "Temporary Substitute Automobile" within the terms of the policy.[1] The trial court recognized that the factual situation was "very close" and that the question was a "close one". Our consideration of the evidence leads to the conclusion that the finding is clearly erroneous and should be set aside, because without sufficient factual support.

The policy named "Norman Concrete Works" as the insured and specifically covered two passenger cars and six trucks. One of the passenger cars was a 1941 Ford coach. Norman Concrete Works was a partnership composed of Morris Norman, J. D. (David) Norman, and Murray Duke. The firm was engaged in manufacturing concrete blocks and doing concrete work at Baldwyn, Mississippi, and also in road contracting work. One of the latter projects, and which was nearly completed at the time here involved, was work on a section of the Natchez Trace Parkway, near Kosciusko, Mississippi. The policy of insurance imposed no limitation of use of the vehicles to any particular location or to any activity of the firm.

The Oldsmobile car in question was the individual property of David Norman. He used it extensively in carrying on the business of the partnership, and to go back and forth from Kosciusko to his home at Baldwyn on weekends. These trips were combined business and pleasure. In using this car he secured gas from the firm's tank. He was not paid mileage, but was reimbursed for expenses. He knew he had no liability insurance on the car. The Oldsmobile had been operated a total of 43,000 miles in eight

months, and from this appellant argues a demonstration that the car was constantly and continuously used in the business of Norman Concrete Works. In argument at bar appellee suggested such mileage might well result from the owner's age and status as an unmarried man.

On the critical date, the time of the fatal accident, David Norman, driving his Oldsmobile, had left Kosciusko to see about securing a job at Tchula, some 40 or 50 miles away. Lewis Bean, apparently for some purpose of his own, left with him as a passenger. On the trip the collision occurred and Bean was fatally injured. His widow and child thereafter instituted a suit for the homicide against the members of the partnership. It is this suit which these parties sought, in the proceeding here involved, to have the Casualty Company declared obligated to defend and discharge.

The contention of plaintiffs in the declaratory judgment proceeding was that the Oldsmobile was a substitute for the 1941 Ford. As to the 1941 Ford, the testimony is that it was left at the shop by David Norman a "couple of days" before the accident. Morris Norman was notified of this. The lights and brakes were bad. "Several days" after the accident the mechanic was instructed to repair it. The delay resulted because the sole mechanic was working on a drag line at the time. It does not appear that David Norman made any inquiry as to the completion of repairs before leaving on the trip to Tchula. From the evidence as to the "normal use" of the Ford it appears that David used it on the job "most of the time." An employee "came home" (apparently to Baldwyn) in it a few times, but except for this it did not make any long trips. The car was in only fair condition. From the testimony as a whole it is clear that use of the car was limited, except as above mentioned, to local use on the Kosciusko job,—along the location of the work—, and driven the one mile into town for parking each night along with the trucks. It never made any "long trips",

1. "Temporary Substitute Automobile—under Coverages A, B, and C, an automobile not owned by the named insured while temporarily used as the substitute for the described automobile while withdrawn from normal use, because of its breakdown, repair, servicing, loss or destruction;"

though before a 1949 Ford was acquired it had been used for trips to Baldwyn, but never by David Norman. While these circumstances impress us, we consider controlling the absence of any evidence which can be said to establish that the Oldsmobile was, for the trip in question, used as a substitute for the Ford. Upon the trial, David Norman testified about placing the Ford at the shop, and that "no other automobile was available" for the trip. The only testimony which relates to the critical question of "substitution" was made in explanation or rebuttal of questions by opposing counsel as to statements about other matters made in a pretrial investigation. Thus, in response to his counsel's question, "What did you tell them with reference to that? What statement did you make to them as to why you used the Oldsmobile to make the Tchula trip?", David Norman answered," Because the Ford was down—the 1941 Ford was broken down. Q. Did you put that down in writing? A. No, sir, I don't." (*sic*). He did not testify this statement was true, nor renew the statement as present evidence. Under the terms of the policy the fact of substitution was essential to extend coverage. To authorize such extension the party claiming it should, (certainly when in his power, as here), adduce testimony which is sufficient to show, not only that the insured vehicle had been withdrawn from service because of a breakdown, but also that except for this the insured car would have been in use at the time and in the circumstances involved. Such showing is necessary to establish "temporary use as a substitute", i. e., a car put in place of another.

We will not attempt to recite the testimony in further detail. Upon consideration of the evidence as a whole we think the trial Court's finding that the Oldsmobile was a substitute vehicle within the terms of the policy is clearly erroneous. We are convinced that: in view of the extensive use of the Oldsmobile by David Norman in every phase of the business except on and along the actual road construction job; the age, condition and normal use of the Ford; that neither partner could remember it being used to make a trip away from the job on business; and the absence of affirmative evidence indicating the Ford would have been normally used for the trip; the breakdown of the Ford was only coincidental, and it can not be held, under this evidence, that the Oldsmobile was substituted for it at the time in question.

This view of the case is controlling, and it is therefore unnecessary to discuss appellant's remaining assignments of error.

The judgment of the trial Court is reversed and the cause remanded with direction to enter judgment for the defendant.

Reversed.