The SERVICE MUTUAL INSURANCE COMPANY OF TEXAS, Appellant,

v.

Tommy CHAMBERS, d/b/a Tommy Chambers Supply Company, Appellee.

No. 15715.

Court of Civil Appeals of Texas.

Fort Worth.

April 13, 1956.

Rehearing Denied May 11, 1956.

Wilson & Cureton and Frank M. Wilson, Waco, for appellant.

Bates, Riggs & Singleton and John V. Singleton, Jr., Houston, for appellee.

MASSEY, Chief Justice.

The question for determination is the construction of coverage under the Texas Standard Form Automobile Insurance Policy in light of certain undisputed facts.

Insuring agreement IV reads as follows: "Automobile Defined, Trailers, Two or More Automobiles. (a) Automobile. Except where stated to the contrary, the word 'automobile' means * * * (3) Temporary Substitute Automobile—under coverages A, B and C an automobile not owned by the named insured while temporarily used as the substitute for the described automobile *while withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."* (Emphasis added.)

The policy further reads as follows: "Exclusions. This policy does not apply: * * * (c) under coverages A and B, * * * while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the company."

The policy contract was issued by the appellant Company, hereinafter termed "Company", to the appellee upon a 1946 Chevrolet Winch Truck and upon a 1950 Lowboy 36 foot Trailer. There were other units covered by the contract, but they are immaterial to the question here posed. On or about date of January 9, 1953, the appellee was authorized by virtue of a permit issued by the authorities of the City of Houston to move a five-room house across said city. Ordinarily, he would use the aforesaid truck and trailer to provide the motive power and carrying facility incident to the transport of houses. However, as of this time the winch upon the truck was out of order and not practical to be used in connection with the activity of moving the particular house contemplated by the permit. It was decided to use the truck as the "lead vehicle", i. e., the vehicle going along in front of the truck and trailer carrying the house. A deal was made with an outside business concern to hire or rent a truck with winch in good working order, and such hired truck was hooked onto the trailer supporting the house. This truck was following along behind the insured truck serving as the "lead vehicle" and was providing the motive power to pull the trailer upon which the house was loaded.

At about 3:00 A.M., as the movement was in progress, a private passenger automobile was being driven from the opposite

direction to that of appellee's operation along a street in Houston. This private passenger vehicle passed by the insured truck and by the hired truck immediately behind it, but collided with the house situated upon the trailer being pulled by the hired truck.

The owner and operator of the private passenger automobile brought a damage suit against the appellee which the Company declined to defend, asserting its contention that appellee derived no benefits from the policy of insurance as applied to such suit. Appellee settled the suit brought against him for the sum of $3,000. Thereafter, appellee prosecuted this suit against the Company for the amount he had paid in settlement of the suit against him for damages, plus attorney's fees. He obtained judgment in the trial court.

There is no doubt but what the primary normal use made of the insured truck was that of providing the motive power to pull the trailer carrying the house to be moved. It was not so used on this occasion because of the breakdown of the winch located thereon. However, the insured truck was used as a utility vehicle and to haul material, etc., in addition to its use in actually moving houses. At the very time of the accident it was being used as a utility vehicle in serving as the "lead vehicle" going before the hired truck pulling the house and trailer. While it had been to an extent withdrawn from "normal use" as considered in the aggregate or maximum meaning of such a term, it was actually functioning as to use and serving a purpose of utility as a motor vehicle at the very time of the accident. Had the third party automobile come into collision with it instead of safely passing by it only to collide with the house, certainly the policy contract would have been effective to provide the appellee with all the benefits of coverage provided by the policy. This would have been the result because of the use or maintenance of the truck as provided by the policy contract.

In view thereof, the truck was clearly one which had not been withdrawn from "all normal use" as that term might be distinguished from "primary normal use".

The policy provided liability coverage for a substitute vehicle when temporarily used because of the withdrawal of the described vehicle from "normal use", and the term was not qualified or explained. It will readily be seen that in the case of a vehicle used 51% of the time for one use and 49% of the time for another, it could be argued that the greater use could be termed the "normal" use. If that be conceded, the same truck, when used for the lesser purpose, could be treated as having been withdrawn from "normal use". Such a construction, if not putting the Company at the mercy of the appellee, would certainly be unreasonable, inequitable or oppressive. This form of construction the courts will avoid if that be possible. 10 Tex.Jur., p. 315, "Contracts", sec. 181, "Illegal, Inequitable or Oppressive Construction Avoided". The forms of liability insurance coverage sold upon the market included those which would have covered the appellee under the circumstances. He could have procured such protection upon the payment of the prescribed premium. This he elected not to do. We therefore conclude that a proper construction of the term "normal use" would be that it is intended to mean and does mean "all normal use". This was the conclusion reached by the Supreme Court of Michigan in the case of Erickson v. Genisot, 1948, 322 Mich. 303, 33 N.W.2d 803; 34 A.L.R.2d 949; 30 C.C.H. Automobile Cases 178. Since the truck named in the policy had not been withdrawn from "all normal use", no insurance ever became effective upon the hired truck substituted in its usual place. Therefore, the trial court erred in denying a judgment to the Company and entering a judgment in behalf of the appellee.

Judgment is reversed and rendered.