HORACE RANSOM, ADMINISTRATOR OF THE ESTATE OF NELSON RANSOM, DECEASED v. THE FIDELITY AND CASUALTY COMPANY OF NEW YORK.

(Filed 8 April, 1959.)

1. **Insurance § 54—**

A provision in a policy that it should cover, in addition to the vehicle described, an automobile temporarily used by insured as a substitute while the described vehicle was withdrawn from normal use because of breakdown, repair, servicing, loss or destruction, *is held* not to cover a vehicle of insured's brother, used by insured on the trip because insured's vehicle was "low on gas." The word "servicing" imports at least the necessity for some mechanical adjustment before the car can be used in normal service. Further, in this case, insured was making the trip in company with his brother.

2. **Same—**

Where insured and his brother lived in the house of their mother as members of one family, the use of the brother's car by the insured on a particular trip comes within the clause of a policy of liability insurance excluding from its coverage a car other than the one described in the policy and driven by insured, if such other car is furnished by a member of insured's household. In such instance, insured's brother is a member of the "household" within the definition of that word as used in the policy.

APPEAL by plaintiff from *Frizzelle, J.,* August Term, 1958 of BERTIE.

This is a civil action instituted on 19 May 1958 by the plaintiff appellant, as surviving administrator, in which he seeks to force collection against the liability insurance carrier of Francis Lee, one of the parties against whom the administrators of Nelson Ransom, deceased, had previously recovered a judgment in the sum of $10,000 as damages for his wrongful death.

Plaintiff's intestate died 3 April 1955 as a result of injuries sustained on the night of 2 April 1955 when he and his bicycle were struck by the 1947 Chrysler automobile owned by Rupert Lee and then being driven by his brother, Francis Lee.

The judgment against Rupert Lee and Francis Lee for the wrongful death of plaintiff's intestate was procured at the August Term 1957 of the Superior Court of Bertie County. Execution was duly issued on said judgment and returned unsatisfied.

At the time of the fatal injuries to plaintiff's intestate on 2 April 1955, there was in force an Automobile Policy of Liability Insurance, Policy No. VF 3560828, which the defendant appellee had theretofore issued to Francis Lee covering his 1939 Buick automobile; and the limits of that contract for personal injuries and death were up to $10,000 for any one person and up to $20,000 in any one accident.

Francis Lee and Rupert Lee both owned automobiles. There was no liability insurance on Rupert Lee's 1947 Chrysler.

The evidence is to the effect that on the night of 2 April 1955, Francis Lee drove his car over to Elbert Williams' place. Rupert Lee "showed up later on his car." The Lees and "some other folks" started to a "setting-up," in another section of the county. Rupert Lee did not have a driver's license; one James Hawkins, a next door neighbor of his, usually drove for him. On the night in question, it appears from the testimony that the 1939 Buick, owned by Francis Lee, the insured, was "low on gas." Francis Lee testified, "I was driving Rupert's car that night because I was low in gas in my car and was going with Rupert to the setting-up."

The evidence further tends to show that Rupert Lee, age 37, and Francis Lee, age 25, at the time of the trial, had lived with their mother for many years in a house which she built about 1951 or 1952 after her husband's death; that their grandmother and the daughter of Rupert Lee also lived in the home. All of the living expenses of these persons were paid by Rupert and Francis Lee, the grandmother being an invalid and the mother also being too feeble to work. Francis Lee testified, "We all lived there together as one family."

At the close of plaintiff's evidence, the defendant moved for judgment as of nonsuit. Motion allowed, and the plaintiff appeals, assigning error.

*John R. Jenkins, Jr., for plaintiff, appellant.*
*James & Speight, William C. Brewer, Jr., for defendant, appellee.*

DENNY, J.  The sole question for determination on this appeal is

whether or not the trial court committed error in sustaining the defendant's motion for judgment as of nonsuit.

The plaintiff contends he has the right to recover from the defendant, Francis Lee's insurer, by reason of the provision in the above-numbered policy of insurance relating to temporary substitute automobile coverage, which reads in pertinent part as follows: "IV (a) * * * except where stated to the contrary, the word 'automobile' means: (3) Temporary Substitute Automobile—under coverages A, B and C, an automobile not owned by the named insured while temporarily used as the substitute for the described automobile while withdrawn from normal use because of its breakdown, repair, servicing, loss, or destruction."

On the other hand, the defendant contends that under the facts in this case the insured's car had not been withdrawn from normal use "because of its breakdown, repair, servicing, loss, or destruction" at the time involved, within the meaning of the policy.

Likewise, the plaintiff contends he is entitled to recover under Section V of the policy which relates to the use of other automobiles and which reads as follows: "Use of Other Automobiles. If the named insured is an individual who owns the automobile classified as 'pleasure and business' or husband and wife either or both of whom own said automobile, such insurance as is afforded by this policy for bodily injury liability, for property damage liability and for medical payments with respect to said automobile applies with respect to any other automobile, subject to the following provisions: * * * (b) This insuring agreement does not apply (1) to any automobile owned by, hired as part of a frequent use of hired automobiles by, or furnished for regular use to the named insured or a member of his household other than a private chauffeur or domestic servant of the named insured or spouse."

The defendant further contends that Rupert Lee and Francis Lee belong to the same household and that the use of Rupert Lee's car by Francis Lee is expressly excluded from coverage by the above exclusion clause in the insured's policy of insurance.

No North Carolina decision has been cited or found construing either section of the policy that has been brought into question on this appeal.

In 5A Am. Jur., Automobile Insurance, section 87, page 85, it is said: "The typical 'substitution' provision provides coverage while the substituted vehicle is being temporarily used, where the described automobile is withdrawn from normal use because of its breakdown, repair, servicing, loss, or destruction. The usual general rules of con-

struction apply to such a provision, and it has been stated that the purpose of the provision is not to narrowly limit or defeat coverage, but to make the coverage reasonably definite as to the vehicles the insured intends normally to use, while at the same time permitting operations to go on should the particular vehicles named be temporarily out of commission, thus enabling the insurer to issue a policy upon a rate fair to both insured and insurer, rather than one at a prohibitive premium for blanket coverage of any and all vehicles which the insured might own or operate.

"Specifically, construing the phrase 'withdrawn from normal use' as requiring the insured vehicle to be withdrawn from all normal use, it has been held that where the insured was involved in an accident while driving a borrowed automobile on an extended trip, recovery was precluded by the failure of the injured person to establish that the truck described in the policy, although in poor mechanical condition had been withdrawn from all normal use on the day of the accident. Also, the fact that a borrowed trailer was more suitable for a contemplated trip than a trailer owned by the insured and specifically covered under the policy could not be considered a 'breakdown, repair, servicing, loss, or destruction,' within the meaning of a 'substitution' provision." *Erickson v. Genisot*, 322 Mich. 303, 33 N.W. 2d 803; *State Farm Mut. Auto. Ins. Co. v. Bass*, 192 Tenn. 558, 241 S.W. 2d 568.

In the case of *Iowa Mutual Insurance Co. v. Addy*, 132 Colo. 202, 286 P 2d 622, the reason for the substitution was strikingly similar to the case at bar. The insured owned an Oldsmobile which was covered with a policy of liability insurance issued by the defendant company and which had a substitution provision identical with the one in the case before us. The insured also had a Chevrolet automobile, the property of his employer, which he kept at his home for use in his work as an insurance adjuster. The insured and his family were preparing to attend a Thanksgiving dinner at the home of friends, when the insured discovered that his Oldsmobile automobile was "low on gasoline and had heavy snow chains on the tires." Because of this, he decided to drive the Chevrolet—the company car. While enroute to their dinner appointment a collision occurred in which the plaintiff, the insured's wife, was injured. In the trial court the case was allowed to go to the jury and the plaintiff recovered, on the theory that insured's automobile was "withdrawn from normal use because of * * * servicing * * *." On appeal this was reversed. The Court said: "The trial court determined that the car in which plaintiff was injured, and being used by her husband at the time of the accident was a

RANSOM *v.* CASUALTY Co.

temporary substitute vehicle within the provisions of paragraph IV of the policy. This provision of the policy makes it clear that a temporary substitute automobile is one used by the insured temporarily when the automobile which is insured under the policy is withdrawn from its customary use because of its breakdown, repair, servicing, loss or destruction. No such situation could be made to apply here, because the only reason the Oldsmobile sedan covered by the policy was not used was because it was 'low on gasoline' and had heavy snow chains on the tires. This was not a breakdown, it was not destroyed, it was not being serviced at the time, neither was it being repaired, and the trial court's apparent conception of the situation, that because it was low on gasoline and had snow chains on the tires, that it fell within the servicing exception is too strained for acceptance * * *. A reasonable and logical interpretation of the word 'servicing' would seem to present a condition where the automobile covered by the policy was in some manner actually disabled."

It would seem there could be circumstances under which one might be justified in substituting another car, if the one insured was so defective mechanically that the owner was afraid to drive it on an extended trip. *Allstate Insurance Co. v. Roberts,* 156 Cal. App. 755, 320 P 2d 90. However, all the authorities hold that it must be proven that the defective car was withdrawn from normal use at the time and during the period the substitute car was used. *Pennsylvania T. & F. Mut. Cas. Ins. Co. v. Robertson* (U.S.C.A. 4th Cir.), 259 F 2d 389; *State Farm Mut. Auto. Ins. Co. v. Bass, supra; Iowa Mut. Ins. Co. v. Addy, supra; Erickson v. Genisot, supra.* The Buick automobile covered by the defendant's policy of insurance had not had a breakdown, was not in need of repair, nor was it being serviced at the time Francis Lee was driving the 1947 Chrysler car.

In our opinion, the provisions upon which the appellant relies did not authorize the substitution of another car in lieu of the insured car merely because the insured car was "low on gas." The servicing, in our opinion, contemplates at least some mechanical adjustment before the car can be used in normal service. Moreover, in light of the testimony of Francis Lee, it would seem that there is considerable doubt about there being a substitution of the Chrysler car owned by Rupert Lee. Francis Lee testified he was driving Rupert's car and was going with Rupert to the "setting-up." Unquestionably, we think if he had not been driving the car he would have been one of Rupert's guest passengers rather than in possession of the car as a substitute for the Buick.

On the other hand, the exclusion clause hereinabove set out has

been construed many times. It has been well-nigh universally construed to exclude an automobile furnished by another member of the household, furnished for regular use, as well as any hired or leased automobile. *Aler v. Travelers Indemnity Co.*, 92 F Supp. 620; *Rathbun v. Aetna Casualty & Surety Co.*, 144 Conn. 165; 128 A 2d 327; *Leteff v. Maryland Casualty Co.* (La. App.), 91 So. 2d 123; 5A Am. Jur., Automobile Insurance, section 88, page 86; Anno: 173 A.L.R. 902, et seq.

The case of *Travelers Indemnity Co. v. Pray* (U.S.C.A. 6th Cir.), 204 F 2d 821, construes the identical exclusion clause now before us as not excluding a car furnished by a member of the household unless it was furnished for regular use and not for occasional use. This decision was by a divided Court and has been criticized in the case of *Leteff v. Maryland Casualty Co.*, *supra*.

The *Leteff* case gives an exhaustive review of cases in which the involved clause has been construed. In that case the Court said: "Bearing in mind the established rules of interpretation and the reason for such exclusion clauses as shown in the cited jurisprudence, we believe that the interpretation placed upon the exclusion clause by the majority in the *Pray* case not only stands alone but is in error. The great weight of authority is *contra*."

There can be no doubt about Rupert Lee and Francis Lee being members of the same household under the definitions given by the various authorities. *State Farm Mut. Auto Ins. Co. v. James* (C.C.A. 4th Cir.), 80 F 2d 802; *Farm Bureau Mut. Automobile Ins. Co. v. Violano* (C.C.A. 2d Cir.), 123 F 2d 692. For many definitions of the word "household" see Words and Phrases, Volume 19, page 700, et seq.

In our opinion, the ruling of the trial court on the defendant's motion for judgment as of nonsuit was correct, and we so hold.

Affirmed.