GLADNEY, Judge.
The plaintiffs brought this suit, one of two consolidated cases, to recover damages resulting from an automobile collision which occurred about 10:15 o’clock on the night of June 13, 1958, on U. S. Highway No. 80, approximately one mile east of Choudrant, in Lincoln Parish. Involved in the accident was a Plymouth driven by Buford Caldwell, and a Chevrolet driven by Henderson Jordan. Buford Caldwell, Plenderson Jordan and Ronny Webb Fulli-love died from injuries received, and other occupants of the P&mouth were seriously injured. Plaintiffs in this action are Dixie L. Fullilove and Myrtle Webb Fullilove, who appear in their own behalf and for the use and benefit of their minor child, Dottie Jean Fullilove. Initially, the named defendants were the State of Louisiana, United States Casualty Company of New York, the public liability insurer of the car driven by Henderson Jordan but owned by his son Larry, and the Southwestern Fire & Casualty Company of Dallas, Texas, the public liability insurer of a Ford automobile, the family car of Henderson Jordan and Mrs. Annie Lesta Jordan, his wife.
Prior to trial, United States Casualty Company of New York paid $10,000.00, the full amount of its obligation under the limits of its policy and passed out of the suit. Also, the State of Louisiana was dismissed as a party defendant when the district judge sustained an exception of no right or cause of action upon authority of Duree v. Maryland Casualty Company, 238 La. 166, 114 So.2d 594. The removal of those defendants leaves as the only contestant in this and its companion case appellant, Southwestern Fire and Casualty Company. The latter’s maximum liability as fixed by its policy, is $5,000 for any one person, and $10,000 for all injured parties, regardless of number. Plaintiffs seek to hold the insurer liable by reason of a “temporary substitute automobile” provision in its policy of insurance issued on a 1957 Ford and registered in the name of Annie Lesta Jordan, wife of Henderson Jordan. Appellant denies that the “temporary substitute automobile” provision in its policy on the Ford extended coverage to the Chevrolet belonging to Larry Jordan. The judge a quo, however, granted judgment in favor of plaintiffs, and the insurance company has appealed.
At the outset we observe that in its brief appellant states the only question to be determined by the court is its liability under the policy issued to Mrs. Jordan. The trial court’s findings as to negligence and quantum are not contested by either side.
*287 The policy, in its insuring clause, recites that the company agrees to pay on behalf of the insured, all sums up to the limits of liability, which the insured shall become legally obligated to pay as damages because of injury or death to others. The policy further provides:

“Persons Insured

“The following are Insureds under Part 1:
“(a) With respect to the owned automobile,
“(1) The named Insured and any resident of the same household,
“(2) Any other person using such automobile, provided the actual use thereof is with the permission of the named insured;
“(b) With respect to a non-owned automobile,
“(1) the named Insured,
“(2) any relative, but only with respect to a private passenger automobile or trailer not regularly furnished for the use of such relative.”
It also provides under Definitions, that: “Under Part 1:
“ ‘named insured’ means the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household;
“ ‘insured’ means a person or organization described under ‘Persons Insured’ ;
“ ‘relative’ means a relative of the named insured who is a resident of the same household;
“ ‘owned automobile’ means a private passenger or utility automobile or trailer owned by the named insured, and includes a temporary substitute automobile;
“ ‘temporary substitute automobile’ means any automobile or trailer while temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;
“ ‘non-owned automobile’ means an automobile or trailer not owned by the named insured or any relative, other than a temporary substitute automobile.”
Facts pertinent to the question of liability are not controverted. The 1957 Ford automobile described in the policy, although registered in the name of Mrs. Jordan, was in truth a family car, it having been purchased with community funds and it was regularly used by Henderson Jordan in his employment by the Department of Public Works of the State of Louisiana. On the day of the accident Henderson Jordan was driving the Chevrolet automobile belonging to his son, Larry Jordan, who resided in the home of his mother and father. There was an understanding between father and son that the father could at any time use his son’s car without having to ask permission. Both Larry Jordan and Mrs. Jordan testified that Mr. Jordan used his son’s car rarely and then only for short trips in the local area when the Ford was not available. They could r.ecall only one extended or long trip other than that undertaken on June 13th, when Jordan did not use the Ford vehicle. When her husband was not using the Ford, ordinarily Mrs. Jordan would use it for the purpose of going to work in the morning, returning at noon for dinner, then back to work at the conclusion of the dinner hour, and later the car would be driven home again at the end of the business day. Mrs. Jordan substantially followed this routine on the day of the accident.
On the day of his death Jordan left on a long trip on business for his employer. His journey took him to Hornbeck, Louisiana, just north of Leesville, then to Sicily Island, on to Waverly and thence home, a distance approximately 350 miles. There is no direct evidence as to why Jordan did *288 not use the Ford on the date of the accident. The testimony, however, shows the condition of the tires on the Ford was such it would have been most imprudent for Jordan to have taken the vehicle on the long trip contemplated. J. L. McConathy testified he apprised Jordan of the condition of the tires just a few days before the accident. Another service station operator, William D. Truluck, told Mrs. Jordan on the day before the accident the tires were generally in a dangerous state and should be replaced. He testified he had found a seven-inch gash in one tire which went clear through the fabric, leaving only a little fiber, and the remaining tires were worn smooth. A few days after the accident one of the tires blew out while Larry was driving and he purchased four new tires from McConathy. The latter testified that after he replaced the old tires they were in such poor condition he could make no further use of them and discarded them as junk.
The above-quoted provisions of the insurance policy disclose Henderson Jordan was a “named insured” and the term “owned automobile” includes a “temporary substitute automobile”. Accordingly, as we appreciate appellant’s argument there is only one issue for our consideration and that is whether the Chevrolet car was a temporary substitute automobile within the extension of coverage of the insurance policy. Or stated somewhat differently, the question is did appellant’s contract of insurance extend coverage to the Chevrolet automobile belonging to Larry Jordan and being driven by his father, Henderson Jordan, at the time of the accident? For the purpose of discussion we divide the issue into two questions: Was the Ford withdrawn from normal use? and was it withdrawn because of a breakdown?
The “temporary substitute automobile” clause purports to automatically extend protection without the insured being required to obtain specific approval of the insurer and has made its appearance in automobile liability insurance policies within comparatively recent years. Its application in a given case does not appear to have been considered by an appellate court of Louisiana. The purpose of the substitution clause, it seems, is not to narrowly limit or defeat coverage, but to make the coverage reasonably definite as to vehicles the insured intended normally to use, while at the same time permitting operations to go on should the particular vehicles named be temporarily out of commission, thus enabling the insurer to issue a policy upon a rate fair to both insured and insurer, rather than one at a prohibitive premium for blanket coverage for any and all vehicles which the insured might own and operate. Lloyds America v. Ferguson, 5 Cir., 116 F.2d 920; Allstate Insurance Company v. Roberts, 156 Cal.App.2d 755, 320 P.2d 90.
An automobile collision policy should be construed according to the evident intent of the parties, to be derived from the words used, the subject matter to which they relate, and the matters naturally or usually incident thereto, and language employed in the policy must be interpreted so as to effectuate the insurance and not for the purpose of defeating it. LSA-C.C. arts. 1901, 1903, 1945 and 1951.
Our first inquiry is concerned with whether the Ford was withdrawn from normal use. Mr. and Mrs. Jordan were the owners and users of the car. When Mr. Jordan was using it in connection with his work Mrs. Jordan was without its service. Almost without exception Mr. Jordan never used his son’s car on a trip of any length in connection with his work. The Ford was regularly and normally used by him for such a trip as he undertook on the day of the accident. When the Ford, therefore, was incapable of making that trip because of the condition of its tires, it must be considered as having been withdrawn from its regular, customary or normal use by Henderson Jordan. The evidence fully sustains this finding. Counsel for appellant, however, contends most earnestly that because Mrs. Jordan, notwithstanding the bad con *289 dition of the tires, did in fact drive the Ford back and forth to her place of employment, the car was serving its customary use and was never withdrawn from normal use on the day of the collision. We cannot agree under the circumstances that such use, limited as it was to several short trips hack and forth from home to office, was the normal use implied by the policy. The construction so employed by counsel suggests that if it is possible to use the car for any purpose or to any extent regardless of its limited use due to- bad tires, or some other condition, the fact that the vehicle was withdrawn from its primary normal use is of no consequence. Just such an argument was made in Mid-Continent Casualty Company v. West, Okl., 351 P.2d 398. The Supreme Court of Oklahoma rejected the contention, saying:
“In our opinion, the evidence showing that it would have been possible to use said auto, equipped with the old tires, for short trips in Temple is not of controlling significance. It is a matter of common knowledge that there is a difference in the dangers involved in using badly worn tires for that kind of driving and in using them on a long trip at sustained high speeds, especially in hot weather like existed at the time of Lenard’s proposed trip to Oklahoma City. Under the reasonable and liberal interpretation that must be given the ‘temporary substitute automobile’ provision, its wording does not mean that the insured’s own car, or the ‘described automobile’, must be disabled from all use.”
In its ordinary usage “normal” is defined by Webster to mean conforming with a certain type or standard and it is synonymous with the word “regular”. In its condition the Ford was unfit for general and customary service. Hence, we are of the opinion, and so hold, that the scanty use made of the vehicle by Mrs. Jordan on June 13th was not such normal use as to exclude the protection which the policy extends to its insured who must temporarily use another’s automobile. Use of the Chevrolet was required only because of the unfit condition of the car described in the insurance policy.
That the Ford car was physically unfit because of the conditions of the tires is convincingly shown by the testimony of McConathy and Truluck. An automobile with tires incapable of enduring such a trip as made by Henderson Jordan on June 13th, must be considered with respect to its use as broken down. This is so because it was not available for the more important purposes of transportation. We find the Ford was withdrawn from normal use by reason of its breakdown.
The ruling in this case is inconsistent with the pronouncements in Erickson v. Genisot, 322 Mich. 303, 33 N.W.2d 803, and Service Mutual Insurance Company of Texas v. Chambers, Tex.Civ.App., 289 S.W. 2d 949, which are cited in appellant’s brief, both of which decisions hold ihe withdrawal must be from all normal use. Such construction, we think, narrows too much the meaning of normal use. The opinions found in Mid-Continent Casualty Company v. West, and Allstate Insurance Company v. Roberts, supra, are correct, and are in accord with our judgment.
Other cases cited as supporting appellant’s position are Pennsylvania Thresher-men & Farmers’ Mutual Casualty Insurance Company v. Robertson, 4 Cir., 259 F. 2d 389; Iowa Mutual Insurance Company v. Addy, 1955, 132 Colo. 202, 286 P.2d 622; State Farm Mutual Automobile Insurance Company v. Bass, 1922, 192 Tenn. 558, 241 S.W.2d 568; Western Casualty & Surety Company v. Norman, 5 Cir., 197 F.2d 67; Lloyds America v. Ferguson, 5 Cir., 116 F. 2d 920; Allstate Insurance Company v. Roberts, 156 Cal.App.2d 755, 320 P.2d 90, 92; 34 A.L.R.2d 936, 947-951; Ransom v. Fidelity & Casualty Co., 1959, 250 N.C. 60, 108 S.E.2d 22.
The decision in Pennsylvania Thresh-ermen & Farmers’ Mutual Casualty Insurance Company v. Robertson turned upon a factual finding that as of the time of the *290 accident the vehicle described in the policy was not withdrawn from normal use for it had been repaired, was being fully used, and was in nowise disabled on the day of the accident. Iowa Mutual Insurance Company v. Addy, and Ransom v. Fidelity & Casualty Co. are cases wherein the use of other cars was solely for convenience and did not involve vehicles withdrawn from normal use because in some manner actually disabled. Both of the two vehicles allegedly withdrawn from normal use were merely low in gasoline and one of the cars had on tire chains. In State Farm Mutual Automobile Insurance Company v. Bass the named tractor and the trailer constituted one vehicle, hence there was no coverage when the tractor was towing a borrowed trailer. Also there was no breakdown whatsoever. Western Casualty & Surety Company v. Norman involved facts which disclose an Oldsmobile was not a substituted car because it was regularly used in every phase of the business except on road construction jobs. It, therefore, could not with reason be said to fall within the classification of a temporary substitute vehicle. The cases of Lloyds America v. Ferguson and Allstate Insurance Company v. Roberts are contrary to appellant’s position. Thus, save in Service Mutual Insurance Company of Texas v. Chambers and Erickson v. Genisot, the cited cases do not exclude protection from a named insured who uses a temporary substitute automobile while his own broken down car is susceptible of some use.
Counsel further contends that the fact that Mrs. Jordan was using the Ford automobile at the time her husband was using the Chevrolet would subject the insurer to liability on two automobiles at the same time. We find nothing in the policy which would prohibit liability within the prescribed policy limits on two vehicles at the same time. If, because of the condition of the tires or for a mechanical reason the automobile has been withdrawn from normal use on the day of the accident, and was destroyed by fire, or was stolen, would the insurer have denied liability simply because a named insured was using a temporary substitute automobile? We think not.
The district court held the use by Henderson Jordan of his son’s automobile on the day of the accident was a temporary use within the meaning of the policy under consideration and that the Chevrolet automobile was substituted for the Ford automobile because of the fact that the Ford automobile was in need of repair and was temporarily disabled from making the type or kind of trips that was involved in this case.
We are of the opinion there is no manifest error in the opinion from which appealed, and accordingly, the judgment is affirmed at appellant’s cost.