SANDERS, Justice
(dissenting).
These suits involve the interpretation of a Family Automobile Liability Insurance Policy. This is a relatively new type of policy. The pertinent provisions have not been construed by the appellate courts of this state prior to the decision by the Court of Appeal in the instant cases. There is also a paucity of jurisprudence on the precise legal question here presented in other states. Therefore, this case is attended with unusual significance in the development of the sociolegal pattern of current jurisprudence.
The practical effect of this Court’s decision, as I view it, is to, require that the *880 ■owned and insured automobile be withdrawn from all use before coverage is afforded to a “temporary substitute automobile” under the provisions of the policy. To this holding, I cannot subscribe, since, in my opinion, it is in conflict with the terms of the policy which require a withdrawal from “normal use” only.
The policy of insurance on the Ford automobile contains the following provisions which are pertinent to a decision in this case:
“ * * * ‘owned automobile’ means a private passenger or utility automobile or trailer owned by the named Insured, and includes a temporary substitute automobile;
“ ‘temporary substitute automobile’, means any automobile or trailer while temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; * *
By the terms of the policy, two requirements must be met herein to warrant the imposition of liability on the insurer for damages arising from the temporary use by the insured of the substituted automobile:
(1) The owned automobile must have been withdrawn from normal use; and
(2) The withdrawal of the owned automobile must have been caused by a breakdown.
The plaintiffs contend that the Ford had been withdrawn from normal use because-of its breakdown, namely, worn and gashed tires; and that, therefore, the Chevrolet, was a temporary substitute automobile within the terms of the policy.
The defendant contends that inasmuch as. the Ford was actually used by Mrs. Jordan on the day of the accident to go to and from work and was not withdrawn “from use”,, the Chevrolet was not a temporary substitute automobile. Hence, it concludes, there-was no insurance coverage. The defendant asserts that the policy was not intended to. cover the “operation of two automobiles by members of the same household” simultaneously.
Squarely posed for decision is the question of whether or not the Ford automobile-was withdrawn from normal use because-of its breakdown.
In construing an insurance contract,. courts are not authorized to add or detract from its language. Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 125 A.L.R. 1075; Edwards v. Life & Casualty Ins. Co. of Tennessee, 210 La. 1024, 29 So.2d 50; Hemel v. State Farm Mutual Auto Insurance Company, 211 La. 95, 29 So.2d 483; Oil Well Supply Co. v. New York Life Ins. Co., 214 La. 772, 38 So.2d 777; Albritton v. Fireman’s Fund Ins. Co.,. 224 La. 522, 70 So.2d 111; Monteleone v. American Employers’ Insurance Co., 239 La. 773, 120 So.2d 70.
*882 In the Muse case, cited supra, this Court declined to add or delete words in the insurance policy to reach a conclusion favorable to the insured and stated [193 La. 605, 192 So. 75]:
“In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts, or to take anything from them.”
Under familiar rules of construction, if the language of an insurance policy is ambiguous, it must be construed in favor of the insured and against the insurer. The court must adopt the interpretation most favorable to the insured, since the insurer is the author of the contract. LSA-Civil Code, Article 1957; Muse v. Metropolitan Life Ins. Co., supra; Salomon v. Equitable Life Assur. Soc. of U. S., 202 La. 1001, 13 So.2d 329; Hemel v. State Farm Mutual Auto Insurance Company, supra; Stanley v. Cryer Drilling Co., 213 La. 980, 36 So.2d 9; Oil Well Supply Co. v. New York Life Ins. Co., supra; Moll v. Mutual Health Ben. & Acc. Ass’n, 223 La. 511, 66 So.2d 320; Albritton v. Fireman’s Fund Ins. Co., supra; Monteleone v. American Employers Insurance Co., supra.
The provision for coverage of a substituted vehicle is for the benefit of the insured, and, if any construction is required, it is to be construed liberally in his favor. Farley v. American Automobile Insurance Company, 137 W.Va. 455, 72 S.E.2d 520, 34 A.L.R.2d 933; Allstate Insurance Company v. Roberts, 156 Cal.App.2d 755, 320 P.2d 90. Its purpose is not to narrowly limit or defeat coverage but rather to extend it automatically to protect the insured when he uses a substitute automobile temporarily because of the withdrawal of the regular vehicle for a reasonable cause set forth in the policy. Allstate Insurance Company v. Roberts, supra; Lewis v. Bradley, 7 Wis.2d 586, 97 N.W.2d 408; Lloyds America v. Ferguson, 5 Cir., 116 F.2d 920. The phrase, “normal use”, as employed in the substitution provision denotes use which is normal as pertains to the insured. Mid-Continent Casualty Company v. West, Okl., 351 P.2d 398.
The majority opinion construes the word normal in the policy as having “the same meaning” as “usual.” Finding that the use of the Ford by Mrs. Jordan for conveyance to her work was usual (when her husband was not driving it in his employment), the Court concludes that the automobile was in normal use. Therein lies the fallacy of the decision.
In this connection, the etymological development of the word normal is both relevant and illuminating. The word is derived from the Latin norma, which is defined as a carpenter’s square for measuring right *884 angles. In figurative usage, it means rule, standard, precept, or model. Cassell’s New Latin Dictionary. New York, Funk & Wagnalls Company, 1959; The Classic Latin Dictionary. New York, Hinds, Noble and Eldredge, n. d.; Webster’s New International Dictionary of the English Language. Springfield, Mass., G. & C. Merriam Company, Second Edition, 1939. The Latin word passed into our language in the noun norm which has as its primary meaning: a rule or authoritative standard; model; type; pattern. Webster’s New International Dictionary of the English Language, supra. Normal is that which corresponds to the norm or general standard of which every member of its class should be capable. Crabb’s English Synonyms. New York, Harper and Brothers, Revised Edition, 1945, p. 523, normal. As stated in Webster’s Dictionary of Synonyms,[1]
‘a person or thing is normal (opposed to abnormal or exceptional) that does not deviate in any marked way from what has been discovered or established as the norm * * * for one of its kind ác X # »
While normal and usual are sometimes treated as synonyms, they are at most analogous words with different meanings. See Usual, Webster’s Dictionary of Synonyms, p. 864. The distinction between these terms is primarily, although not exclusively, one of breadth and range of application Usual has the connotation of habitual or’ customary. As such, it may characterize a. plurality of the uses of an automobile. On. the other hand, the phrase “normal use” is all-embracive: it refers to the total pattern of the varied uses of the automobile by the insured. It includes the long as well as the short trips of the insured.
Contextually, in the insurance contract, normal use can best be defined as that use which when taken as a complete pattern, or as a totality, attains the norm, or standard, for automobiles generally. When the phrase is thus defined in the light of its etymology and context, the conclusion is inescapable that the Ford automobile, restricted as it was to short distances, was not in normal use on the day of the accident. The lame saddle horse which is ridden by the farmer’s son to the cross-road store but which cannot be used to round up the herd of Brahman cattle in the far pasture is not in normal use.
Insofar as I can determine, there are only five cases in the jurisprudence which approximate the factual matrix in the cases at bar: Erickson v. Genisot, 322 Mich. 303, 33 N.W.2d 803; Service Mutual Insurance Company of Texas v. Chambers, Tex.Civ. App., 289 S.W.2d 949; Lewis v. Bradley, supra; Allstate Insurance Company v. *886 Roberts, supra; Mid-Continent Casualty Company v. West, supra.
In the Erickson and Service Mutual Insurance Company cases, the courts, apparently construing the word normal in the sense of usual or customary, held that the withdrawal must be from all normal use. This construction, it will be noted, adds the word all to the policy provision and thereby brings about an attenuation of meaning. The Allstate and Mid-Continent Casualty cases correctly apply the policy provision to the factual situations with which the courts were there concerned, which involved no actual use of the withdrawn automobile. In the latter case, the Supreme Court of Oklahoma, very appropriately, stated:
“In our opinion, the evidence showing that it would have been possible to use said auto, equipped with the old tires, for short trips in Temple is not of controlling significance. It is a matter of common knowledge that there is a difference in the dangers involved in using badly worn tires for that kind of driving and in using them on a long trip at sustained high speeds, especially in hot weather like existed at the time of Lenard’s proposed trip to Oklahoma City. Under the reasonable and liberal interpretation that must be given the ‘temporary Substitute automobile’ provision, its wording does not mean that the insured’s -own car, or the ‘described automobile’, must be disabled from all use. (See Allstate Ins. Co. v. Roberts, 156 Cal.App.2d 755, 320 P.2d 90, 91, 92, in which the court recognized that such provision may contemplate withdrawal from normal use of an auto whose use for an out-of-town trip, might be ‘imprudent’, as distinguished from impossible). It says only: * when withdrawn from normal use * * *’. It is not disputed that the insured’s ‘normal’ use included out-of-town, as well as in-town trips. Therefore, if the Buick was dangerous and disabled for trips which Lenard customarily made in it, like the one in question, we think it was disabled for his ‘normal use’, within the meaning of that term in the quoted provisions; and we so hold.”
A contrary interpretation of the policy provision renders the insurance coverage indefinite and uncertain to the real prejudice of the insured. For illustration, it can easily be postulated that an insured has left both his keys and partially disabled automobile at his residence. He departs on an extended trip in a borrowed vehicle. After his departure, and obviously without his knowledge, his son drives the automobile on errands to the grocery store. With the first turn of the wheels on the automobile left behind, the vehicle driven by the insured is' stripped of ■ liability coverage. This is reductio ad absurdum. Such an unusual result could not have been intended under the policy.
*888 It has been strenuously urged that the policy was never intended to provide an umbrella of insurance for two vehicles at the same time. There is nothing in its provisions which excludes multiple coverage. Moreover, it is clear that such coverage is consonant with the terms of the policy under appropriate circumstances.
It must be concluded that the Ford automobile of the insured which could not be used by him for the extended trip because of thin and gashed tires was withdrawn from normal use because of a breakdown, notwithstanding the fact that it was used by his wife as a conveyance to and from her employment.
In my opinion, the judgment of the Court of Appeal in favor of the plaintiffs should be affirmed. I respectfully dissent.

. Webster’s Dictionary of Synonyms. Springfield, Mass., G. & C. Merriam Co., First Edition, 1951, p. 689, Regular.