## TRAVELERS INDEMNITY CO. v. PRAY.
### No. 11735.

United States Court of Appeals
Sixth Circuit.
June 10, 1953.

Miller, Circuit Judge, dissented.

Leroy G. Vandeveer, Detroit, Mich. (Clark & Henry, Bay City, Mich., Vandeveer, Haggerty, Garzia & Haggerty, Detroit, Mich., on the brief), for appellant.

John M. Patterson, Bay City, Mich. (Patterson & Patterson, Bay City, Mich., on the brief), for appellee.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

This appeal by the Travelers Indemnity Company requires interpretation of an exception clause in an automobile liability insurance policy issued by it to Hubert T. Leibfarth, Jr., who owned a Pontiac automobile. Young Leibfarth's father, for whom he was named, owned a Cadillac automobile which was insured in another company. While the son, accompanied by his father, was driving the latter's Cadillac, they met with an accident in consequence of which both died and the appellee herein, Floyd J. Pray, was seriously injured.

Pray recovered judgment in the amount of $27,000 against the estates of the Leibfarths, father and son. Ohio Casualty Company, the insurer which issued the liability policy on the Cadillac owned by Leibfarth, Sr., paid on the above-mentioned judgment its policy limit of $10,000 for injury to one person in one accident; and Pray filed a writ of garnishment in the United States District Court against the appellant Travelers Indemnity Company to collect on the policy issued by it to Leibfarth, Jr. After a trial without the intervention of a jury, the District Judge, on the basis of his findings of fact which are supported by substantial evidence and are not clearly erroneous and for the reasons stated in his opinion, entered judgment for $10,000 against the appellant insurer in favor of Pray.

The policy issued by appellant, upon which this judgment was rendered, insured Hubert T. Leibfarth, Jr., against public liability while driving the Pontiac automobile owned by him and also while he was driving "any other automobile," subject to specified exceptions embraced in Article V (b) (1) in the following language: " * *

(b) This insuring agreement does not apply: (1) to any automobile owned by, hired as part of a frequent use of hired automobiles by, or furnished for regular use to the named insured or a member of his household other than a private chauffeur or domestic servant of the named insured or spouse; * * *."

■ Considerable controversy developed as to whether, as a matter of fact, Hubert T. Leibfarth, Jr., was a member of the household of his father. We think that the record shows that he was. Cf. Ocean Accident & Guaranty Co. v. Schmidt, 6 Cir., 46 F.2d 269. After being discharged from military service in 1946, the young man lived for a time in his father's home. He attended college for three years, and then returned home and worked in his father's jewelry store. He was rooming at his father's home in October, 1950, at the time of the accident, and was not paying for his room and board, though this was given consideration in fixing his pay for personal services performed in the father's jewelry store. Sometimes the son purchased groceries for the family. All the furniture, except a Victrola, in the room which he occupied was owned by the father. The other member of the household was young Leibfarth's mother, Mrs. Leibfarth, Sr. The mother, the father and the son each owned an automobile; but there was no understanding among them by which each could drive the automobile of the other, although they did so occasionally by permission of the owner. However, we do not consider the fact that young Leibfarth was a member of his father's household as determinative of the issue presented.

■ In our judgment, the exception clause in the policy in question is undoubtedly ambiguous. It is established law that exceptions from liability in an insurance policy, unless expressed plainly and without ambiguity, will be construed strictly against the insurer and liberally in favor of the insured. This flows from the principle particularly applicable to insurers that, in the interpretation of contracts generally, where there is ambiguity in the language used, an agreement in writing should be interpreted strictly against the draftsman.

The Supreme Court has said: "The rule is settled that in case of ambiguity that construction of the policy will be adopted which is most favorable to the insured. The language employed is that of the company and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it." Mutual Life Insurance Co. v. Hurni Packing Co., 263 U.S. 167, 174, 44 S.Ct. 90, 91, 68 L.Ed. 235. In Stroehmann v. Mutual Life Insurance Company of New York, 300 U.S. 435, 439, 440, 57 S.Ct. 607, 81 L.Ed. 732, it was held that, where it was doubtful from the language of a policy of life insurance whether provisions for disability benefits were excepted from the incontestible clause, the doubt would be resolved in favor of the insured.

In reversing a judgment in favor of an insurance company in an action brought on a life insurance policy, we said: "It is settled law that if an insurance contract is so drawn as to be ambiguous, or to require interpretation or to be fairly susceptible of two different constructions, so that reasonably intelligent men would honestly differ as to the meaning of the contract, the construction most favorable to the insured should be adopted." Marshall v. Equitable Life Assur. Soc., 6 Cir., 116 F.2d 901, 902, 903, 135 A.L.R. 1225, certiorari denied 313 U.S. 575, 61 S.Ct. 1088, 85 L.Ed. 1533.

Appellant concedes in its brief that, if the policy provision in question is ambiguous, it must be construed most favorably to the insured, but denies that the controversial clause is in actuality ambiguous. The opinion of District Judge Chesnut in Aler v. Travelers Indemnity Co., D.C.Md., 92 F.Supp. 620 which construed the identical clause, is urged by appellant as direct authority. In that case, Aler sued the Travelers Indemnity Company for a declaratory judgment that the insurance company was liable to him, on an automobile liability policy which it had issued covering a Mercury Sedan which he owned, for damages awarded against him in favor of a person injured by being struck by another automobile, a Plymouth, owned by his mother-in-law, which, with her permission, was being driven by Aler at the time of the acci-

dent. The mother-in-law of the insured lived with him and her daughter and, at the time of the accident, was undoubtedly a member of his household. The insured, his wife, and his son had been accustomed to use the mother-in-law's car, as well as his own, when desired. The cars were usually parked, one behind the other, on the driveway alongside Aler's home. On the day of the accident, he had used his mother-in-law's Plymouth because it was nearer the street. The crucial fact in the Aler case was that the insured, with her permission, used his mother-in-law's car whenever he pleased. He used it alternately with his own automobile, which was covered by the Traveler's Indemnity policy.

To the contrary in the instant case, Mrs. Leibfarth, Sr., testified that there was no arrangement between her husband and her son for each to drive the other's automobile at will, and that her son used his father's car only with the latter's permission and then not very often. The son had no set of keys to the father's car, nor had the father keys to the son's car. The salient facts of the Aler case are, therefore, quite different from those in the case at bar.

■ We are not in accord with that portion of the opinion of Judge Chesnut in which he construed the policy clause in controversy, as follows: 92 F.Supp. 623 "* * * both the grammatical construction and the obvious purpose of the excepting clause is to include as an exception to liability the use by the insured of an automobile owned by a member of his household. While the quoted clause is not ambiguous in meaning, it does require careful and close reading to gather its whole meaning. This is apparently due to a revision and condensation of the phraseology used, for brevity. * * * Thus, on close reading, the excepting clause (eliminating wording not applicable in this case) excludes from coverage the use of any other automobile (1) owned by the insured or a member of his household or (2) furnished for regular use to the insured or a member of his household. * * *"

In order to make a complete sentence of the questioned provision, grammatical construction would seem to require that the three phrases (1) "to any automobile owned by," (2) "hired as a part of a frequent use of hired automobiles by," and (3) "or furnished for regular use to", have as their object the words "the named insured or a member of his household" etc. Without inserting a comma *(which is not to be found in the policy)* before the words "the named insured", the provision cannot be so construed; for unless the comma be inserted as specified, the first two of the three aforementioned phrases are left dangling without an object.

Moreover, it appears that the policy intended to tie together indissolubly the words in the phrase "or furnished for regular use to the named insured or a member of his household"; and, to that end, the comma was not inadvertently, but deliberately, omitted. If this be true, in order to bring any automobile owned by a member of the insured's household within the exception would require the omission of the word "or." But, if the word "or" should be omitted, the sentence read in entirety would not be good English, nor would it make good sense. Although punctuation is not to be permitted to control meaning where the text is clear, it may become, in case of ambiguity, the controlling guide to proper interpretation.

■ The insurance company in its brief asserts that it was the intention of the company, in which the insured acquiesced, that the increased premium consideration paid for the added coverage of the insured when operating another automobile was limited to his occasional or infrequent operation of a "stranger's" automobile; and that, under no circumstances, was the insured intended to be covered when operating an automobile owned by a member of his household. We do not gather from the entire policy, including the exception provision, that the insured, in purchasing the added insurance coverage, would naturally have indulged any such remote notion. We think that an ordinary person would assume that, for the extra premium, his liability would be covered when occasionally—not regularly—he used, with permission, an automobile owned by a member of his household. To assume that he would consider

himself covered only when using the automobile of his, or his wife's, chauffeur or domestic servant, or the automobile of a stranger, seems extremely illogical. The interpretation urged by the insurance company would do violence to the established principle of law that any fair doubt as to the meaning of its own words should be resolved against the insurer [see Mutual Life Insurance Company v. Hurni Packing Co., supra]; and that this principle directly applies to an exception clause in an insurance policy [see Stroehmann v. Mutual Life Insurance Company of New York, supra].

The exception clause provides that the insurance does not apply to *any* automobile owned by the insured. Indulging in technical literalism, the failure to insert the word "other" after the word "any" and before the word "automobile" would actually exclude coverage of the automobile owned by him, the operation of which was the principal subject matter of the insurance policy. But we do not rest decision on this picayunish point.

We consider the clause in controversy quite ambiguous and so would deem ourselves non-conformists to the controlling principle of interpretation should we strain to give effect to ambiguous language in an insurance policy favorably to the insurance company, instead of to the insured, by inserting punctuation, or adding or eliminating words, in a sentence drafted by the insurer and uniformly used in its policies of the type here involved.

In our judgment, it is reasonable and just to hold the insurer in the policy under construction liable to the insured, who was, at the time of the accident, operating his father's car—not as a part of the regular, frequent, or customary use, but only by special permission on a particular occasion. This is a practical application of the controlling principle in the interpretation of ambiguous language used in an insurance policy.

The authorities cited in the briefs have been given consideration, but we see no occasion for window-dressing by citation or discussion of cases bearing some analogy yet neither controlling nor directly in point.

The judgment of the District Court is affirmed.

MILLER, Circuit Judge (dissenting).

I am of the opinion that the automobile involved in the accident was not covered by the policy, and that the judgment should be reversed.

It is a fundamental rule of construction that a written contract, if ambiguous, should be construed in accordance with the intention of the parties. Punctuation leading to a contrary result should be disregarded. Annotation, 3 A.L.R. 1062; Holmes v. Phenix Ins. Co., 8 Cir., 98 F. 240, 47 L.R.A. 308; Crawford v. Burke, 195 U.S. 176, 192, 25 S.Ct. 9, 49 L.Ed. 147. The Supreme Court said in Ewing v. Burnet, 11 Pet. 41, 54, 9 L.Ed. 624: "Punctuation is a most fallible standard by which to interpret a writing; it may be resorted to when all other means fail; but the Court will first take the instrument by its four corners, in order to ascertain its true meaning; if that is apparent, on judicially inspecting the whole, the punctuation will not be suffered to change it."

It seems clear that the purpose of the extended coverage provided by the so-called "drive other cars" clause was to extend the regular insurance purchased by an insured on his own individual car to *casual* driving of cars other than his own, but not to include other cars usually at hand the use of which would be more than casual. Obviously, the insurer is not insuring two cars for one premium, even though it may be slightly increased for the extended coverage. Accordingly, the intent of the exclusion clause, is to exclude other cars that will probably be used more than casually, which, according to experience well known to all of us, means excluding cars owned by a member of the household. See Annotation, 173 A.L.R. 901, 902.

The exclusion clause in the present policy, construed in accordance with the above principles, and eliminating inapplicable phrases, seems to plainly provide, with respect to the use of "any other automobile":

"This insuring agreement does not apply: (1) to any automobile owned by, * * * the named insured or a member of his household. * * *" The Cadillac automobile involved in the accident, was owned by a member of insured's household, and was so excluded from coverage. See Aler v. Travelers Indemnity Co., D.C., 92 F. Supp. 620, 623.