[Civ. No. 23789.   Second Dist., Div. Two.   Aug. 19, 1959.]

JOHN JUZEFSKI, Appellant, v. THE WESTERN CASU-
ALTY AND SURETY COMPANY (a Corporation),
Respondent.

Lee Freeman and Earle K. Stanton for Appellant.

Frank Wickhem for Respondent.

FOX, P. J.—This case involves the interpretation of the provisions of an automobile insurance policy extending coverage, with certain exclusions, to accidents occurring while the insured is driving a car other than his own. The trial court held that the coverage of the policy did not extend to the accident in question. From such adverse judgment plaintiff has appealed.

Seymour A. Keyes was the owner in November, 1955, of a Chevrolet car which was insured with defendant. While driving his father's Packard he was involved in an accident with the plaintiff. The father had insurance coverage on the Packard in the amount of $5,000. Plaintiff recovered a $20,000 judgment against Seymour Keyes on account of the accident and the sum of $5,000 and costs was paid on account of the judgment by the company which carried the insurance on the father's Packard. The present action was then brought

by plaintiff to recover from defendant company, Seymour's insurance carrier, the balance due on the judgment. Recovery was denied on the theory that certain exclusionary provisions made inapplicable to the instant case a provision of the policy extending coverage to accidents while the insured was driving another car.

The pertinent provisions of the policy read as follows:

## "V.   USE OF OTHER AUTOMOBILES.

"If the named insured is an individual who owns the automobile classified as 'pleasure and business' or husband and wife each or both of whom own said automobile, such insurance as is afforded by this policy for bodily injury liability, for property damage liability, and for medical payments with respect to said automobile applies to any other automobile, subject to the following provisions: . . .

"(b)  This insuring agreement does not apply:

"To any automobile owned by, hired as part of a frequent use of hired automobiles by, or furnished for regular use to the named insured or a member of his household other than a private chauffeur or domestic servant of the named insured or spouse."

Young Keyes, who was the only witness in this case, testified that he was separated from the service in August, 1955, and returned to the home of his parents in Burbank where he was staying at the time of the accident. He married and established his own home the following April. In September, after his discharge from the Army, he started to school and also secured part-time employment. He owned a Chevrolet which he used to go to school and to work. His father owned a Packard and a pick-up truck which he used to go to and from work. Keyes, Sr., used the Packard as a pleasure car and in the evenings. Mrs. Keyes also used it. Seymour drove the Packard on "about four occasions" before he joined the Army. After his discharge and prior to the accident he drove the Packard "on special occasions." He used the Packard on occasions when he went out in the evening with his girl but he did not use it every time he took her out. He used his own car most of the time for this purpose. In response to the question as to how often he used the Packard per week, Seymour testified "that would have to be strictly an estimate due to that there was no set time or no set principle involved in the use of the car. It was up to whether it was available, or my father would let me use it. It might be one time one week; it might be three times another week." It would average around

twice a week. There were periods, however, when he did not use his father's car "even once a week." He did not have any regular arrangement with his father for the use of the Packard. It was necessary for young Keyes to ask his father's permission every time he wanted to use it. Permission, however, was granted except when either the father or mother had made previous plans that involved the use of the Packard.

The trial court determined that the policy excluded coverage to the assured when he was driving: (1) "Any automobile furnished for regular use to" him or a member of his household, or (2) any automobile owned by a member of his household; and (3) that the exclusionary provisions of the policy are not ambiguous. The court thereupon held that the accident in question was excluded from coverage and rendered judgment for defendant company.

Plaintiff argues that the decision and judgment do not find support in either the terms of the policy or in the evidence.

"The words of a contract are to be understood in their ordinary and popular sense." (Civ. Code, § 1644.) ■ "The understanding of an ordinary person is the standard used in construing a contract of insurance. . . ." (*Arenson* v. *National Auto. & Cas. Ins. Co.,* 45 Cal.2d 81, 83 [286 P.2d 816].) ■ In *Continental Cas. Co.* v. *Phoenix Const. Co.,* 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914], the court stated the cardinal rules of construction of an insurance policy: "It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. [Citations.] ■ If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. [Citation.] ■ If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, whether as to peril insured against [citations], the amount of liability [citations] or the person or persons protected [citations], the language will be understood in its most inclusive sense, for the benefit of the insured."

■ "It is also the rule that exceptions and exclusions are construed strictly against the insurer and liberally in favor of the insured. (*Arenson* v. *National Auto. & Cas. Ins. Co. supra*; *City of Santa Monica* v. *Royal Indem. Co.,* 157 Cal. App.2d 50, 54 [320 P.2d 136].) ■ In *Osborne* v. *Security Ins. Co.,* 155 Cal.App.2d 201 [318 P.2d 94], this court stated in construing an insurance policy that: "The language of the

policy is presumed to be that of the insurer and when ambiguous it is to be construed in such manner as to provide full coverage of the indicated risk rather than to narrow the protection.'' (P. 207.)

■ We shall first inquire whether there is substantial evidence to support the trial court's determination that the Packard was ''furnished for regular use to the named insured,'' i.e., to young Keyes, for if that finding is adequately supported the accident in question would be excluded from the coverage of his policy and the judgment should be affirmed.

The evidence discloses that the son owned a Chevrolet that he drove to and from school and work and most of the time for social occasions. He used his father's Packard on special occasions to take his girl out in the evening. During some weeks he would use the Packard once; during others it might be three times, while in still others he would not use it at all; ''. . . there was no set time or no set principle involved in the use of the car.'' He did not have any standing arrangement with his father for the use of the Packard; it was necessary to obtain his father's permission each time he drove it. This evidence does not support the trial court's determination that the Packard was furnished for regular use to the son. The use here described is obviously not regular. It was rather a casual and occasional use for which special permission had to be secured each time the car was driven. (*Travelers Indemnity Co.* v. *Pray,* 204 F.2d 821.)

■ Next, it is necessary to determine whether the exclusionary provisions in this policy are ambiguous. For convenience we set out these provisions again:

''(b) This insuring agreement does not apply:

''To any automobile owned by, hired as part of a frequent use of hired automobiles by, or furnished for regular use to the named insured or a member of his household other than a private chauffeur or domestic servant of the named insured or spouse.''

In *Travelers Indemnity Co.* v. *Pray, supra,* the court was called upon to interpret this identical language. The court held that ''the exception clause in the policy in question is undoubtedly ambiguous.'' Later in the opinion the court referred to these provisions as ''quite ambiguous.'' A mere reading of the exclusionary provisions quoted above demonstrates the correctness of the court's characterization of them. They are obviously unclear.

Illustrative of the ambiguity of the exclusionary provisions

is that aspect of the policy which apparently denies coverage if the insured is operating a vehicle which he or a member of his household owns (other than the insured vehicle), or one which is furnished for his regular use or the regular use of a member of his household. Does "his household" mean a household of which he is a part, or does it refer to a household of which he is the head? The extent of coverage varies considerably depending upon the meaning which is assigned to the phrase "his household." The trial court concluded that Seymour's insurance did not cover the instant accident for the reason, *inter alia*, that the Packard was being furnished for the regular use of his mother, a member of his (the son's) household, and for the further reason that it was owned by his father, a member of his (the son's) household. As Seymour was not the head of the household, the trial court must have construed "his household" to mean a household of which he is a part. While this construction is not unreasonable, the phrase is equally susceptible to a more limited construction, viz., that the exclusionary provisions under consideration do not become operative unless the automobile is owned by or furnished to a member of a household of which the insured is the head. This ambiguity, under the authorities to which reference has already been made, must be resolved against the insurer. So considered, the exclusionary provisions under discussion do not apply to the facts of the instant case. The language of the policy was that of the insurance company. It would have been a simple matter for it to have clearly stated the household to which reference was being made.

The judgment is reversed.

Ashburn, J., concurred.

HERNDON, J.—I dissent.

I regard it as a close and debatable question whether the record discloses substantial evidentiary support for the trial court's finding that the Packard automobile was "furnished for regular use to the named insured." I incline to the view that this finding is adequately supported.

However, I base my dissent primarily upon the view that insurance coverage in this case is excluded by clear and unambiguous provisions of the policy. In reaching this conclusion I have accepted as entirely correct the general canons of construction as stated in the majority opinion. As I read the words of the instant contract, giving them meaning as they

are generally understood "in their ordinary and popular sense," I find room for only one reasonable interpretation. The added or extended coverage of the policy with respect to vehicles other than that specifically insured does not apply to "any automobile owned by ... the named insured or a member of his household." To my mind, the only natural and reasonable construction of the words "his household" is that they mean the household of which he is a member. "In normal speech, one's household is the familial or residential group with which one lives; a wife or child, as well as the pater familias, has a household." (*Farm Bureau Mut. Auto. Ins. Co.* v. *Violano*, 2 Cir., 123 F.2d 692, 695.) "One of the definitions of the word 'household' given in Webster's New International Dictionary is, 'Those who dwell under the same roof and compose a family; a domestic establishment.' . . ." (*Island* v. *Fireman's Fund Indemnity Co.*, 30 Cal.2d 541, 547 [184 P.2d 153, 173 A.L.R. 896].) "Whether the term 'household' or 'family' is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a 'collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness.' " (*Lumbermen's Mutual Casualty Co.* v. *Pulsifer*, 41 F.Supp. 249, 251-252; *cf. Island* v. *Fireman's Fund Indemnity Co., supra*, 30 Cal.2d 541, 548.) "Persons who dwell together as a family constitute a 'household' . . ." (*Arthur* v. *Morgan*, 112 U.S. 495, 500 [5 S.Ct. 241, 28 L.Ed. 825].) "We do not doubt that a son living under the parental roof is a member of the household even though he has reached his majority and supports himself . . ." (*Ocean Accident & Guaranty Co.* v. *Schmidt*, 46 F.2d 269, 270.)

*Travelers Indemnity Co.* v. *Pray*, 204 F.2d 821 is cited as a case in which the majority of a divided court held identical language to be "quite ambiguous." I prefer the reasoning of Judge Miller's dissenting opinion in that case, and also the reasoning of Judge Chesnut in *Aler* v. *Travelers Indemnity Co.*, 92 F.Supp. 620 where the identical excepting clause was held *unambiguous* and was given the same interpretation given it by the trial court here.

A later case, dealing with the same policy language is *Leteff* v. *Maryland Casualty Co.*, 91 So.2d 123, 136, decided by the Louisiana Court of Appeals. After citing numerous decisions, including *Aler* v. *Travelers Indemnity Co., supra*, and *Travelers Indemnity Co.* v. *Pray, supra,* the Louisiana

court comments "[p]robably the leading case on the particular narrow problem here involved, and the case most frequently cited, is *Aler* v. *Travelers Indemnity Co.*, D.C. Md. 1950, 92 F.Supp. 620." "The great weight of authority is in accord with the interpretation of this provision by Judge Chesnut in *Aler* v. *Travelers Indemnity Co.*, D.C. Md. 92 F.Supp. 620, 623 . . . " (*Campbell* v. *Aetna Casualty & Surety Co.*, 211 F.2d 732, 736.) The Louisiana appellate court appraises the majority opinion in the Pray case as follows: "Bearing in mind the established rules of interpretation and the reason for such exclusion clauses as shown in the cited jurisprudence, we believe that the interpretation placed upon the exclusion clause by the majority in the Pray case not only stands alone but is in error. The great weight of authority is contra." (*Leteff* v. *Maryland Casualty Co.*, *supra*, 91 So.2d 123, 139-140.)

While I fully agree with the rule that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer, I think it incorrect to find ambiguity by the process of suggesting a strained and quite unnatural interpretation as the basis of possible conflict.

I would affirm the judgment.

Respondent's petition for a hearing by the Supreme Court was denied October 15, 1959.