[Civ. No. 22860. First Dist., Div. Two. Aug. 15, 1966.]

SAFECO INSURANCE COMPANY OF AMERICA, Plaintiff and Appellant, v. RICHARD C. THOMAS et al., Defendants and Respondents.

Hill & Hill and Victor M. Corbett for Plaintiff and Appellant.

Walkup, Downing, Wallach & Sterns, William B. Boone and Gerald C. Sterns for Defendants and Respondents.

AGEE, J.—Plaintiff insurance company appeals from a judgment declaring that its automobile liability policy issued to respondent Thomas on his 1961 Valiant also covered him for personal injury liability to others while driving a ''non-owned automobile'' under the circumstances hereafter related.

On May 25, 1964, in the course and scope of his employment as an agent of the Internal Revenue Service, Thomas drove a 1962 government-owned Plymouth from his home office at Eureka to the town of Klamath. The last official business transacted by him on that day was at Crescent City, about 5 :30 p.m.

He had dinner with two other Internal Revenue Service employees at a restaurant in Crescent City. They had an after-dinner drink at the ''Frontier Club,'' south of Crescent City. Thomas then continued south to Klamath, where he intended to stop overnight, and checked in at the Riverside Motel about 1 :15 a.m.

He left the motel shortly thereafter and drove to the ''Silver Dollar'' at Klamath Glen, a distance of several miles. His purpose was to have a drink and the trip had no relation to official business. While there he struck up a conversation with respondent Hodge, a stranger, and agreed to give him a lift back to Klamath.

On the way, about 1 :45 a.m., Thomas' car collided with one driven by respondent Jerome. Both Jerome and Hodge subsequently filed personal injury actions against Thomas. Appellant denied coverage of Thomas under its policy and filed this

declaratory relief action against Thomas, Hodge and Jerome.

The policy names Thomas as the insured and specifically describes the Valiant owned by him. It provides coverage for his "use of the owned automobile or any non-owned automobile," provided (1) such non-owned automobile is not one "furnished for the regular use of . . . the named insured" and the "actual use thereof [by Thomas] is with the permission . . . of the owner and is within the scope of such permission. . . ."

The trial court found that neither exclusion was applicable to the circumstances involved herein. Our inquiry is whether there is substantial evidence to support such findings.

### "Regular Use" Exclusion

The respondents' position may be epitomized by the following questions asked of Thomas and his answers thereto: "Q. You don't ordinarily use a government car for social purposes? A. No. Q. This was a rather unusual thing? A. Yes."

In *Pacific Auto. Ins. Co.* v. *Lewis,* 56 Cal.App.2d 597 [132 P.2d 846], the facts were that an automobile sales agency regularly furnished automobiles to its salesmen for demonstration purposes. One of their salesmen (Wells) had an accident while driving a demonstrator on a personal trip. It was held that the "drive other cars" coverage, in an insurance policy issued on an automobile jointly owned by Wells, was applicable despite an exclusionary provision therein that such coverage should not apply while he was driving a nonowned automobile "furnished for regular use to the named insured."

The opinion contains the following pertinent language: "It is unnecessary to hold that the words 'regular use' as used in these policies referred to an exclusive use. But *'regular use' reasonably suggests a principal use, as distinguished from a casual or incidental use.* [Citation.] Assuming that the use of such a car may be regular without being exclusive, there are other elements which may be considered in determining the meaning intended by the rather broad and not very explicit language used in these policies to set forth the exception to the coverage otherwise provided. Whether an automobile is furnished by another to an insured for his regular use may reasonably depend upon the time, place and purpose for which it is to be used. One furnished for all purposes and at all times and places would clearly be for his regular use. *One furnished at all times but strictly for busi-*

*ness purposes alone could hardly be said to have been furnished for his regular use at a time and place when it was being used for personal purposes.''* (P. 600; italics added.)

Upon the authority of *Lewis, supra,* the court in *Comunale* v. *Traders & General Ins. Co.,* 116 Cal.App.2d 198 [253 P.2d 495, 68 A.L.R.2d 883], reached the same interpretation. There the insured regularly used his brother's truck to drive to and from work but had never used it for any other purpose except on the night of the accident, when he was en route to visit his aunt. The trial court's holding that coverage existed, notwithstanding the ''regular use'' exception, was affirmed. (See also: *Palmer* v. *Glens Falls Ins. Co.* (1961) 58 Wn.2d 88 [360 P.2d 742]; *Schoenknecht* v. *Prairie State Farmers Ins. Assn.* (1960) 27 Ill.App.2d 83 [169 N.E.2d 148].)

The above decisions are uniform in holding that the ''regular use'' exception involved herein does not apply to an isolated, incidental or casual *personal* use by the named insured of a motor vehicle regularly furnished to him by the owner thereof for *business* purposes.

Appellant cites no authority to the contrary and, in fact, states in its closing brief that it ''concedes that the case authority on interpretation of the 'regular use' exclusion favors Respondents' position herein.''

### *''Permission'' Exclusion*

 Thomas was the only witness called. He testified that, although the government car assigned to him for a field trip was for his exclusive use during such trip, it was to be used ''only for official business.''

Appellant stresses the fact that between 5:30 p.m. and 1:45 a.m., when the accident happened, Thomas was not transacting any official business. However, it cannot be seriously contended that Thomas did not have implied permission to drive from the place where he ended his day's work to a suitable place to have dinner and then to a suitable place to stay overnight on his return trip to Eureka.

If the accident had happened while Thomas was on his way from Crescent City to the Riverside Motel at Klamath, we would think that there could be no doubt that his use of the car at such time and place was with the implied permission of his employer.

The issue as to implied permission arises by reason of Thomas' irregular use of his employer's automobile *after* he had arrived at the motel.

We think it is appropriate at this point to quote the following observation of our Supreme Court: "Viewing the matter realistically, we know that it is not uncommon for publicly owned automobiles to be used for their private purposes by public officers and employees with the permission of their superiors; and this being so, we have concluded that the policy of protection of the public by the required insurance coverage should prevail." (*Jurd* v. *Pacific Indemnity Co.*, 57 Cal.2d 699, 705 [21 Cal.Rptr. 793, 371 P.2d 569].)

While Thomas, the sole witness, was called by appellant as an "adverse witness" under the provisions of section 2055 of the Code of Civil Procedure, he was far from being adverse to appellant.

The following leading and conclusionary question and the volunteered statement of Thomas following the "Yes" answer which the question suggested will illustrate this: "Q. And this use of the government car on the evening in question and the early morning hours in question was beyond the permission that the government had given you to use the car, was it? A. Yes, I was severely reprimanded for using the car in this manner."

There is no other testimony bearing upon the nature of this reprimand. Certainly it did not result in his discharge. Viewing the evidence in the light most favorable to respondents, "using the car in this manner" could well be interpreted to mean "in this [reckless] manner." The manner in which Thomas was driving at the time of the accident was not the subject of any testimony adduced at the trial.

A leading case in California on the issue of implied permission where an employee is entrusted with a "company car," to be used only for the business purposes of the employer, is *Blank* v. *Coffin*, 20 Cal.2d 457 [126 P.2d 868].

Coffin was employed by defendant Mercantile Acceptance Corporation as a field man to collect loan payments and repossess cars. On a Sunday morning about 4 o'clock, he was driving the company car, which had been assigned to him for business use only, on his way back from a "social function," when it collided with another car in which plaintiff was riding.

Coffin had been instructed never to use the car for pleasure or personal matters. The trial court granted a directed verdict in favor of Mercantile Acceptance Corporation on the ground that the evidence was insufficient as a matter of law to justify a finding that at the time of the accident Coffin was operating

the automobile with the implied permission of his employer. The judgment based thereon was reversed.

Chief Justice (then Justice) Traynor said: "If the evidence shows that an automobile was being driven by an employee of the owner at the time of an accident, the jury may infer that the employee was operating the automobile with the permission of the owner. [Numerous citations.] . . . It is not always possible for a party to a lawsuit to introduce evidence directly bearing upon the existence of a fact that he is attempting to prove. The evidence available to him may serve only to establish the existence of certain primary facts that are logically connected with the material fact. . . . In most cases, therefore, the jury is free to disbelieve the evidence as to the nonexistence of the fact and to find that it does exist on the basis of the inference. [Citations.]" (20 Cal.2d at 460-461.)

Chief Justice Traynor pointed out, however, that: "If the evidence contrary to the existence of the fact is clear, positive, uncontradicted, and of such a nature that it can not rationally be disbelieved, the court must instruct the jury that the nonexistence of the fact has been established as a matter of law." (20 Cal.2d, at p. 461.)

It seems clear to us that, under the facts of the instant case and the law as stated in *Blank* v. *Coffin,* the within issue of permissive use is one to be determined by the trier of fact.

Thomas contracted with his insurance company for coverage not only on the private automobile which he owned but also on "any non-owned automobile" which he operated. If it is to be held that the permissive use exclusion deprives respondents Jerome and Hodge of the benefits of such coverage *as a matter of law,* then the evidence in support of such a holding should be "clear, positive, uncontradicted, and of such a nature that it can not rationally be disbelieved." (*Blank* v. *Coffin, supra.*) We do not think that the evidence herein complies with that requirement.

Appellant also raises the point that Thomas was not authorized to carry passengers in his employer's car except persons with whom he had official business. This point was answered in *Blank* v. *Coffin, supra,* as follows: "The fact that Coffin was accompanied by a friend in violation of the rules of the company could not establish that he did not have permission to drive the car." (20 Cal.2d, at p. 462.)

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.