GENNARO DiORIO, *ET AL.*, PLAINTIFFS-APPELLANTS, v.
NEW JERSEY MANUFACTURERS INSURANCE COM·
PANY, INC., *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued June 5, 1973—Decided December 4, 1973.

Mr. *E. Barry Kline* argued the cause for plaintiffs (*Messrs. Kline and Kline,* attorneys).

Mr. *William T. McElroy* argued the cause for defendants (*Mr. McElroy,* of counsel; *Mr. Richard D. Catenacci,* on the brief; *Messrs. Hughes, McElroy, Connell, Foley & Geiser,* attorneys).

The opinion of the Court was delivered by

WEINTRAUB, C. J. This is a declaratory judgment action to determine whether a "non-owned automobile" was covered by the "Family Automobile Policy" issued by defendant carrier. The policy expressly covered the operation of a "non-owned automobile" by the named insured or by a "relative" of his, defined as a resident of the same household. The operator was Gennaro DiOrio, the 17-year old son of the named insured, Generoso DiOrio. The son was a resident of the father's household. The trial judge, sitting without a jury, found for the carrier, and the Appellate Division affirmed. We granted certification. 63 *N. J.* 262 (1973).

The appeals were prosecuted by the injured claimant. Neither the named insured nor his son participated.

"Part I" of the policy, dealing with "liability," provides protection for the following persons:

(b) with respect to a non-owned automobile,
    (1) the named insured,
    (2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission.

There is no dispute that Gennaro's operation was with the "permission" of the owner of the non-owned automobile as that word has been construed. The policy defines "non-owned automobile" to mean:

an automobile or trailer *not owned by or furnished for the regular use of either the named insured or any relative,* other than a temporary substitute automobile. (Emphasis is ours.)

We have italicized the critical phrase. The carrier contended the automobile in question was "furnished for the regular use" of the son and hence there is no coverage. The trial court and the Appellate Division agreed. No member

of our Court votes to uphold that finding. Two members of our Court in their dissenting opinion are "inclined" to do so but would affirm the judgment on the different ground that the automobile was "furnished for the regular use of" the father and that therefore, as they read the policy, coverage is denied the son even though the automobile was not "furnished for the regular use" of the son.[1] Neither the trial court nor the Appellate Division made any finding with respect to this alternative ground. For the reasons which will appear, we disapprove the finding that the vehicle was "furnished for the regular use" of the son, and we remand the matter to the trial court with respect to the alternative ground we have just described.

The policy covered a Chrysler, which was not involved in the accident. The car the son was driving was a DeSoto owned by a partnership which ran a gasoline service station. The father was one of two equal partners. The DeSoto was covered by a liability policy obtained by the partnership from another carrier, and the complaint alleged that carrier has offered the full amount of its policy, $50,000. The DeSoto was used by both partners in the regular business of the partnership. The father also used the DeSoto to travel daily between his home and the service station.

The record does not reveal the extent, if any, to which the father used the DeSoto for non-business purposes. His deposition touched the subject, on examination by the carrier's counsel, in this hazy, conclusional way:

Q. Now, with regard to the DeSoto, you used it, as you indicated, about every day. You brought it home with you every night? A. Correct.

---

[1] We assume the carrier took that stand in the trial court although the record is unclear. The carrier's answer was unrevealing, and the pretrial order said the defendant denied liability "because it [the automobile] was furnished for the regular use of both Generoso DiOrio and his son, Gennaro DiOrio." The trial court's opinion recognized or suggested the issue.

Q. Did you have unrestricted use of that DeSoto? I mean, you would do whatever you wished? A. Yes, surely.

Q. And you used it day to day as you have indicated? A. Yes.

Thus "unrestricted use" were the words of counsel used in the context of the trips to and from work. We cannot be sure the father's response should be read as broadly as the carrier would read it. There was no testimony that the father used the DeSoto for personal ends (the trip to and from the service station was business oriented in our view) and no testimony as to any agreement between the partners in that regard.

With respect to the son's use of the DeSoto, we accept the trial court's summary of the underlying facts although not the conclusions it drew from them:

In his deposition, Generoso DiOrio testified, in substance, as follows: He is the father of Gennaro, who resided with him. At the time of the accident in question, he was the registered owner of a 1967 Chrysler which was generally for his wife's use. At the time of its purchase in November, 1966, he also owned a 1956 De Soto which, at that time, was covered by a New Jersey Manufacturers policy. Ownership was transferred to Mike and Joe's Texaco Service Station, to be used as a service car, and the De Soto was removed from the New Jersey Manufacturers policy. It was thereafter covered by the Reliance Policy.

After the transfer, he continued to use the car daily to drive to and from work. He did not use the Chrysler for that purpose. The De Soto was also used at the station when a customer needed a car while his was being repaired, or to pick up parts. It was also used by DiOrio's partner.

When his son, Gennaro, obtained a learner's permit shortly after his 17th birthday on January 27, 1968, the De Soto was used for instructional purposes at least four times a week. On those occasions, the father taught him how to drive or supervised the son's operation of the automobile. It has been stipulated by counsel that Gennaro DiOrio received his driver's license on April 23, 1968. When Gennaro desired the car thereafter, he was required to ask his father for permission, and he had to return home by 11:00 p.m.

The gist of Gennaro DiOrio's deposition, substantially corroborating his father's testimony, is that when he obtained his learner's permit, he generally used the De Soto to practice, accompanied by his father. He used the Chrysler for that purpose only once or twice. After passing the test and obtaining his driver's license, he used the De Soto

about four times a week after dinner, first obtaining permission from his father. His mother used the Chrysler, but she did not usually let him take it. The one he used regularly was the De Soto.

I find from the depositions that the De Soto was the automobile generally available to Gennaro DiOrio for his own purposes; that it was the one he drove, accompanied by his father, until he obtained his driver's license; and that it was the one he used thereafter, although only with his father's permission.

## I.

As we have said, the trial court found there was no coverage because the car was "furnished for the regular use" of the son, and the Appellate Division affirmed that finding. We are satisfied the car was not "furnished for the regular use" of the son.

An insurance policy, though in form a contract, is a product prepared and packaged by the insurer. The buyer scarcely understands the detailed content of what he is buying. When a court construes a policy, it cannot be indifferent to that reality. We think it fair to read the policy with the enthusiasm of the insurer's production department.

A liability policy may be confined to a specific automobile or it may be written for an individual without regard to any specific automobile. This policy is prominently labeled "Family Automobile Policy." The label of course does not mean the policy covers only a "family automobile." Rather it imports coverage for members of a family, not limited to the operation of a specified car, i. e., a "family automobile." Indeed, as stated above, the policy expressly extends coverage to a "non-owned automobile" and does so for both the named insured and every "relative," meaning "a relative of the named insured who is a resident of the same household."

Thus the son was within the policy's ostensible coverage. But "non-owned automobile" is defined to mean:

an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative. * * *

The question is, how much of the ostensible coverage was taken away by this definition?

In deciding what this insurance package includes, the courts turn to the underwriting concept they believe the Insurer had in mind. It is sometimes said the insurer must have intended only "occasional" use by an insured, so that a use which is more than "occasional" demonstrates the car was "furnished for the regular use." The premise seems to be that the insurer charged little or nothing for the additional coverage of a "non-owned automobile." We find no basis for that assumption. We know only that the insurer packaged a "Family Automobile Policy" which specifically offers, not only coverage with respect to a designated automobile, but also coverage for liability with respect to nondesignated automobiles. The record is silent with respect to the underwriting experience the insurer took into account in fixing the premium for a policy offering the additional coverage. We should not assume the additional coverage was thrown in for nothing.

In defining a "non-owned automobile" the insurer could easily have limited the coverage to such an automobile "if it is used only occasionally" or "if it is used only on irregular occasions." Coverage thus expressed would not be as attractive as coverage spelled out in the words the insurer chose, "not owned by or furnished for the regular use of." The word "furnished" connotes much more than mere permission to use (a requirement the policy requires independently). It connotes some general right to use, something more than use with permission on occasions, whether recurring or isolated. The word "owned" lends color to that reading of the phrase "furnished for the regular use of." One would expect some plenary right to use, a right so constant or continuous that the named insured would assume his policy of insurance could not fairly be understood to cover it. In terms of an underwriting concept, the named insured would readily understand that the insurer did not intend to

cover him or his relatives with respect to an automobile which a reasonable man would know ought to be listed in the policy for a further premium allocated to it. But when the automobile is not owned by the insured and is not in fact used by him to the degree we have suggested, a denial of coverage would depart from that underwriting concept.

Hence it is not surprising that *Travelers Indemnity Co. v. Hudson,* 15 *Ariz. App.* 371, 488 *P.* 2d 1008, 1012 (Ct. App. 1971), said:

> * * * The phrase "regular use" is undefined in the policy. However, the term connotes continuous use; uninterrupted normal use for all purposes; without limitation as to use; and customary use as opposed to occasional use or special use.

or that *Pacific Automobile Ins. Co. v. Lewis,* 56 *Cal. App.* 2d 597, 132 *P.* 2d 846, 848 (D. Ct. App. 1943), said:

> It is unnecessary to hold that the words "regular use" as used in these policies referred to an exclusive use. But "regular use" reasonably suggests a principal use as distinguished from a casual or incidental use.

or that *George B. Wallace Co. v. State Farm Mutual Automobile Insurance Co.,* 220 *Or.* 520, 349 *P.* 2d 789, 792 (Sup. Ct. 1960), said:

> We are of the opinion, therefore, that the phrase "furnished for regular use" as used in context does not imply the manner of use, that is, putting the automobile to the same uses to which an insured would use his own automobile, but implies a right to the regular use of the automobile in the sense that there is an expressed or implied understanding with the owner of an automobile that the insured could have the use of the particular automobile * * * at such times as he desired, if available.

or that *State Farm Mutual Insurance Co. v. Smith,* 206 *Va.* 280, 142 *S. E.* 2d 562, 568 (Sup. Ct. 1965), agreed the phrase contemplates:

> cars under his control that he could use at will and might use often.

Other cases reflecting one or another of these definitions of "regular use" are: *Lumbermen's Mutual Casualty Co. v. Pulsifer,* 41 *F. Supp.* 249, 251 (D. Me. 1941); *Safeco Insurance Company of America v. Thomas,* 244 *Cal. App.* 2d 204, 52 *Cal. Rptr.* 910, 912 (D. Ct. App. 1966); *Government Employees Insurance Co. v. Bernstein,* 263 *A.* 2d 259 (D. C. Ct. App. 1970); *Allstate Insurance Co. v. Government Employees Ins. Co.,* 263 *A.* 2d 78, 82 (Me. Sup. Jud. Ct. 1970); *Ricci v. U. S. F. & G. Co., R. I.,* 290 *A.* 2d 408 (Sup. Ct. 1972).

■ It is clear to us that the automobile was not furnished to the son for his regular use. The automobile was owned by the partnership and used in the partnership business. The son's use was wholly occasional, and depended upon the father's permission in each instance. There was nothing resembling a general privilege to use the car at the son's initiative and when he pleased. We therefore disagree with the basis of decision in the trial court and in the Appellate Division.

## II.

As already noted, neither the trial court nor the Appellate Division dealt with the alternative position which the dissenting opinion in our Court accepts, (1) that coverage is denied *all* insureds if the vehicle was furnished for the regular use of *any* insured even though not furnished for the regular use of the insured who claims coverage, and (2) the automobile was furnished for the regular use of the father and hence the son is not covered.

The policy may be read literally to support the first proposition, for it says

"non-owned automobile" means an automobile or trailer not owned by or furnished for the regular use of *either* the named insured or any relative * * *. (Emphasis is ours.)

The dissenting opinion finds no ambiguity here. It does note that like provisions were found to be ambiguous in the majority opinions in *Travelers Indemnity Co. v. Pray,* 204 *F.* 2d 821 (6 Cir. 1953), and *Jusefski v. Western Casualty and Surety Co.,* 173 *Cal. App.* 2d 118, 342 *P.* 2d 928 (D. Ct. App. 1959), but agrees with criticisms of that view.

Literally, the provision seems unambiguous. A sense of ambiguity arises from a sense of surprise when its terms are applied literally, for under a literal reading, it would follow that the *named insured himself* would never be covered, even on an isolated occasion, while driving a car owned by a relative living with him. Thus a most common familial situation is excluded from the coverage of a "family" insurance policy. That exclusion so undercuts the coverage the buyer of a policy would expect under a non-owned automobile provision as to raise a doubt that the insurer could have so intended. We could readily understand an insured's dismay if we recur to the underwriting concept mentioned above, that the "regular use" provision is intended to deny coverage in circumstances in which a reasonable man would expect protection only if the non-owned car was specifically listed in his policy. Surely no one would expect every member of a household to buy specific coverage for every automobile owned by every other member of the household. The more natural expectation is that each driver would carry his own policy, which policy would be excess insurance as to his operation of the other car or cars. (The policy before us of course contemplates excess coverage, saying "the insurance with respect to a * * * non-owned automobile shall be excess insurance over any other valid and collectible insurance.") The named insured, and his relative too, would not expect coverage as to an additional car owned by the named insured and not specifically insured. But here there was no purpose to overreach the insurer; the automobile was owned by a business partnership which carried liability insurance on the

car. It would be extraordinary to expect the father to take out a second policy on that car.

■ Hence when the additional car is not owned by the named insured, it is understandable that a court would seek, if possible, the sensible result that coverage as to each insured be determined on the basis of his own utilization of the car. In this connection it may be noted that Part I of the policy, which contains the insurer's positive covenants for coverage, says:

> The insurance afforded under Part I applies separately to each insured against whom claim is made or suit is brought, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

We noted the problem in *Butler v. Bonner & Barnewell, Inc.*, 56 *N. J.* 567, 577 (1970):

> The terminology of the previously quoted Ohio policy provisions relating to non-owned automobile coverage is confusing with respect to the application of the "regular use" exception to Mrs. Buenaga. * * * And does the policy not cover even if the car was furnished only for the "regular use" of the policyholder, but his wife was driving it at the time of the accident? She is the person seeking coverage and should she, as a matter of policy and law and regardless of the terminology and definitions in the contract, be entitled to protection since under this hypothesis the car was furnished, not for her "regular use", but for that of her husband? These questions we do not find adequately presented in the briefs before us.

The issue is probably one of law to be resolved in the light of a full record.

■ Turning to the second proposition, that in fact the automobile was furnished for the regular use of the father and that the son is thereby barred, we find the record to be unsatisfactory. One difficulty is that the father, a layman, was asked in conclusional terms whether his use of the car was "unrestricted" and in response he agreed it was. We cannot know whether, if he intended the thrust the carrier would find, the father was stating only an assumption as to

his authority. A mere assumption to that effect would not suffice for a finding that the DeSoto was in fact furnished for the father's regular use. Supporting facts were not elicited. We know the car was used in the partnership business and that in driving to and from work the father was pursuing that business. But we do not know the extent, if any, of his use of the car for personal ends and hence we cannot weigh whether he had a general right of use within the definitions we quoted above. And in this connection, see the following cases holding that a use beyond the "regular use" for which the car is furnished remains within the policy coverage: *Safeco Insurance Co. of America v. Thomas, supra,* 244 *Cal. App.* 2d 204, 52 *Cal. Rptr.* 910; *Schoenknecht v. Prairie Slate Farmers Ins. Ass'n,* 27 *Ill. App.* 2d 83, 169 *N. E.* 2d 148 (Ct. App. 1960); *Pacific Automobile Ins. Co. v. Lewis,* 56 *Cal. App.* 2d 597, 132 *P.* 2d 846 (Ct. App. 1943); *American Universal Ins. Co. v. Dykhouse,* 219 *F. Supp.* 62 (N. D. Iowa 1963), affirmed 326 *F.* 2d 694 (8 Cir. 1964); *cf. Government Employees Ins. Co. v. Bernstein, supra,* 263 *A.* 2d 259. There of course are cases the other way as one would expect in this area. See, for example, *Grantham v. United States Fidelity and Guaranty Co.,* 245 *S. C.* 144, 139 *S. E.* 2d 744 (Sup. Ct. 1964); *Iowa Mutual Insurance Co. v. Addy,* 132 *Colo.* 202, 286 *P.* 2d 622 (Sup. Ct. 1955).

As we have said, the facts were not adequately developed and the trial court made no finding upon this aspect of the case. Indeed the issue was relatively unnoticed in the argument before us. In these circumstances, this aspect of the case should be remanded for further proceedings.

The judgments of the Appellate Division and of the trial court are reversed. The issue dealt with in Part I of this opinion is adjudged in favor of the insureds and the injured claimant. The issue discussed in Part II is remanded to the trial court for proceedings in accordance with this opinion.

MOUNTAIN, J., dissenting. The trial court determined there was no liability under the policy, finding that the DeSoto was furnished for the regular use of the son, Gennaro DiOrio, the driver of the car at the time of the accident. This factual determination brought the case within the exclusion as to certain nonowned vehicles. It was upon this thesis that the Appellate Division affirmed. While I am inclined to agree with this conclusion, which the majority of the Court rejects, I think the decision can better be made to rest upon an alternative and more substantial ground, *i. e.*, that the DeSoto was furnished for the regular use of Generoso DiOrio, the father, and that a finding to that effect brings the case within the terms of the exclusion relating to certain non-owned automobiles.

There appear to be four categories of factual situations which result in a finding of exclusion as to non-owned automobiles. Coverage as to non-owned vehicles is not available if,·

(1) The vehicle involved in the accident is owned by the named insured.

(2) It is furnished for the regular use of the named insured.

(3) It is owned by a relative of the named insured, who is a resident of the same household as the named insured.

(4) It is furnished for the regular use of a relative of the named insured, the relative being a resident of the same household as the named insured.

The holding below rests upon a finding that the facts of this case bring it within category (4) above. I think it more certainly and clearly falls within category (2).

The testimony disclosed — in my opinion unequivocally — that the DeSoto was furnished for the regular use of the named insured, Generoso DiOrio. He originally owned the car and transferred title, without consideration, to a partnership of which he was one of two equal partners. He used the automobile for both business and personal purposes at any

time and at will. He employed the car as a means of daily transportation between home and his place of business. The car was available for his use during evening hours and over weekends. He testified that he had "unrestricted use" of the DeSoto. His son used the car only with his permission and within limits of activity which he prescribed. The fact that the car was also used by his partner and for general partnership purposes would not, in the light of this extensive and unrestricted use on the part of Generoso, affect the result. It is settled that "regular use" does not necessitate a finding of unrestricted use. *Home Insurance Co. v. Kennedy,* 52 *Del.* 42, 152 *A.* 2d 115 (1959); *Moutry v. American Mutual Liability Ins. Co.,* 35 *Wis.* 2d 652, 151 *N. W.* 2d 630, 633 (1967); 1 Long, *The Law of Liability Insurance* (1972), § 4.11, p. 4–26.1. The facts bring the case squarely within category (2) set forth above.

It is urged, however, that the provision is ambiguous and accordingly should be so read as to confine the exclusionary conditions of "ownership" and "furnished for regular use" to the person actually driving the "non-owned automobile" at the time of the accident. The plain and clear meaning of the policy provision itself, as well as the overwhelming weight of authority both in this State and elsewhere are to the contrary.

To come within the exclusion the vehicle must be "not owned by or furnished for the regular use of *either* the named insured *or* any relative . . ." (Emphasis added) It would be difficult to express in more unambiguous language what was clearly the intended meaning. The same argument as to ambiguity, directed to an identical policy provision was made in *Cox v. Santoro,* 98 *N. J. Super.* 360 (App. Div. 1967). The court rejected the contention and said,

The policy definition of a non-owned automobile is clear and unambiguous. *Carr v. Home Indemnity Company,* 404 *Pa.* 27, 170 *A.* 2d 588, 83 *A. L. R.* 2d 922 (Sup. Ct. 1961); *cf. Fidelity and Casualty Company of New York v. Jackson,* 297 *F.* 2d 230, 232 (4 Cir. 1961); *Hamilton v. Maryland Casualty Co.,* 368 *F.* 2d 768 (5 Cir. 1966). To

hold otherwise would be to rewrite the policy. Although the issue here presented was not raised there, a similar definition was held not to afford coverage in *Rider v. Lynch*, 42 *N. J.* 465, 474–475 (1964). Cases such as *Gerhardt v. Continental Ins. Cos.*, 48 *N. J.* 291 (1966), and *Kievit v. Loyal Protect. Life Insurance Co.*, 34 *N. J.* 475 (1961), on which plaintiffs principally rely, are clearly distinguishable. The facts here do not involve technical encumbrances, hidden pitfalls or concealed exclusions. The extent of the company's liability for the operation of non-owned automobiles is plainly set forth as a separate subsection of the policy under the heading "Persons Insured." The definition of a non-owned automobile is included in the definitions which immediately follow it. [98 *N. J. Super.* at 364–365, 237 *A.* 2d at 494]

Typical of many other like statements is the following:

We conclude it [non-owned automobile clause] is not ambiguous and excludes from coverage the insured's use of any other automobile (1) owned by the insured or a member of the same household, or (2) furnished for regular use to the insured or a member of the same household. [*Giokaris v. Kincaid*, 331 *S. W.* 2d 633, 638 (Mo. 1960)]

Consonant with what I believe to be the clear import of the language of the policy, the great weight of authority throughout the country has held that the exclusionary conditions apply with respect to all persons falling within the classes specified in the policy, whether or not operating the non-owned vehicle at the time of an accident. These classes of persons are (1) the named insured[1] and (2) a relative of the named insured living in the same household. Thus a valid reason for exclusion exists if at the time of the accident *any* person falling within either of these classes either owned the car involved in the accident or had been furnished the vehicle for his regular use.

The following cases are among the many decisions holding that where the policy in question contains language identical or substantially similar to the clause we are considering here,

---

[1]"Named insured" may properly be spoken of as a class since the term includes, by definition, not only the owner of the car but also his or her spouse.

there will be no coverage if a reason for exclusion is present with respect to an "insured" or "relative" other than the driver of the car at the time of the accident. These authorities reject the view that we look only to the driver of the vehicle to determine whether a reason for exclusion exists. *Carr v. Home Indemnity Co.*, 404 *Pa.* 27, 170 *A.* 2d 588 (1961) ; *Aler v. Travelers Indemnity Co.*, 92 *F. Supp.* 620 (Dist. Ct. Md. 1950) ; *Hamilton v. Maryland Casualty Company*, 368 *F.* 2d 768 (5th Cir. 1966) ; *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Preston*, 287 *Ala.* 493, 253 *So.* 2d 4 (Ala. 1971) ; *Ransom v. Fidelity & Casualty Co. of N. Y.*, 250 *N. C.* 60, 108 *S. E.* 2d 22 (1959) ; *Lontkowski v. Ignarski*, 6 *Wis.* 2d 561, 95 *N. W.* 2d 230 (1959) ; *Home Indemnity Co. v. Alday*, 213 *So.* 2d 13 (Dist. Ct. App. Fla. 1968) ; *Farber v Great American Insurance Co.*, 406 *F.* 2d 1228 (7th Cir. 1969).

The only cases I have found holding to the contrary are *Travelers Indemnity Co. v. Pray*, 204 *F.* 2d 821 (6th Cir. 1953) and *Juzefski v. Western Casualty and Surety Co.*, 173 *Cal. App.* 2d 118, 342 *P.* 2d 928 (Cal. App. 1959). The latter decision has recently been criticized as containing "strained reasoning." *Heard v. Farmers Insurance Exchange Co.*, 17 *Ariz. App.* 193, 496 *P.* 2d 619, 622 (1972). Each of these cases is a two-to-one decision with a strong dissent. Furthermore they appear to have been uniformly rejected.[2]

---

[2] Cases which have specifically criticized and refused to follow one or both of these decisions include *Leteff v. Maryland Casualty Co.*, 91 *So.* 2d 123, 138–140 (La. App. 1957) ; *Hamilton v. Maryland Casualty Co.*, *supra*, 368 *F.* 2d at 772–773 ; *Simon v. Milwaukee Automobile Mutual Insurance Co.*, 262 *Minn.* 378, 115 *N. W.* 2d 40, 45 (1962) ; *Ransom v. Fidelity & Casualty Co. of N. Y.*, *supra*, 108 *S. E.* 2d at 25–26 ; *Giokaris v. Kincaid*, *supra*, 331 *S. W.* 2d at 636–638. *Cf. Annot.*, "Exclusion from 'drive other cars' provision of automobile liability insurance policy of other automobile owned, hired, or regularly used by insured or member of his household," 86 *A. L. R.* 2d 937, 945 (1962).

The reasonable and wholly legitimate purpose for including in an automobile liability policy this exclusion with respect to certain non-owned automobiles is well stated in *American Casualty Co. v. Lattanzio*, 78 *N. J. Super.* 404 (App. Div. 1967),

> An exclusionary clause or definition, such as the one here involved, manifests an intention on the part of the insurer to protect itself from a situation whereby an insured could purchase a policy covering one automobile and be covered without qualification as to all automobiles available for his use. Annotation, 173 *A. L. R.* 901, 904 (1948) ; see also *Rodenkirk for Use of Deitenbach v. State Farm Mut. Automobile Ins Co., supra*, [325 *Ill. App* 421, 60 *N. E.* 2d 269 (Ct. App. 1945)] and *Vern v. Merchants Mut. Casualty Co.*, 21 *Misc.* 2d 51, 118 *N. Y. S.* 2d 672 (Sup. Ct. 1952). Thus, this type of policy extends coverage to the casual or occasional driving of automobiles other than those specifically covered without payment of an extra premium, while excluding the use of automobiles which are furnished for the regular use of the insured. *Cf. Travelers Indemnity Company v. Hyde*, 232 *Ark.* 1020, 342 *S. W.* 2d 295 (Sup. Ct. 1961). The clause in question represents an attempt on the part of the insurer to strike a balance between the desire of the insured to be covered, even though not always using the owned automobile, and its own right to receive payment of premiums based upon the risk presented by the number of automobiles operated. *Cf. Lumbermen's Mut. Casualty Co. v. Pulsifer*, 41 *F. Supp.* 249, 251 (D. Me. 1941). It has been held that the general effect of such a clause is to give coverage to the insured while engaged in only infrequent or merely casual use of the non-owned automobile, but not in respect to the operation of another automobile which he frequently uses or has the opportunity of using. *Aler v. Travelers Indemnity Co.*, 92 *F. Supp.* 620 (D. Md. 1950). [78 *N. J. Super.* at 410–411]

See also *Keeton, Insurance Law* (1971), § 4.9(b), pp. 239–40; 7 *Appleman, Insurance Law and Practice* (1962), § 4455, pp. 495–97; *Long, The Law of Liability Insurance* (1972), § 4.07, p. 4081.1.

It must be apparent that where an automobile is owned by or furnished for the regular use of any member of a family, the chances are very great that it will also be used by other members of the family, thus substantially increasing the risk of accident and injury. Consequently, if general family coverage is intended for such automobiles, they should jus-

tifiably be listed on the family policy so that a separate premium can be charged. The purpose of the exclusion in the "non-owned automobile" clause is to prevent an insured from obtaining coverage for some or all cars regularly used or owned by the insured by merely listing only one automobile on the family policy and paying a premium calculated upon the risk created by the ownership, maintenance and use of only that one automobile. See, *e. g., Carr v. Home Indemnity Co., supra,* 170 A. 2d at 589.

Furthermore, the clear intent of this clause is to exclude other cars that will probably be used more than casually. As was stated in *Aler v. Travelers Indemnity Co., supra:*

> The general purpose and effect of this provision of the policy is to give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile which he frequently uses *or has the opportunity to do so.* More specifically the evident intent of the limitation with respect to the automobiles is to prevent a situation in which members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured.
>
> [92 *F. Supp.* at 623; Emphasis supplied]

In most of the pertinent decisions the reason for exclusion pursuant to the non-owned vehicle clause is that the automobile is owned by either the named insured or a relative. There are, however, several cases where the factual situation is the same as that we find here, *i. e.,* the automobile has been furnished for the regular use of one other than the driver, and the person to whom it has been so furnished is either the named insured or a relative residing in the same household.

In *Farber v. Great American Insurance Co., supra,* the facts disclosed that at the time of the accident Henry Farber was driving a Chevrolet Corvair which was owned by his wife's uncle, Sam Levy. Levy had furnished the car to his niece, Mrs. Farber, for her general use. Farber owned a Dodge automobile, not involved in the accident, which was

covered by a policy of insurance containing non-owned automobile coverage stated in identical language to that now before us. The court held that this policy afforded no coverage to Farber while driving a car furnished for the regular use of the wife.

Similar facts were before the court in *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Preston, supra.* Arch Preston was driving a Dodge car at the time of the accident. The car was owned by his son-in-law who was in the Marine Corps. It had been left with Preston's daughter for her regular use while her husband was away from home. The daughter was living with her parents. Preston owned two cars of his own, both of which were covered by policies affording non-owned automobile coverage with exclusions substantially like the one we are considering. The court concluded that these facts brought the case within the exclusion of each policy and that hence there was no coverage.

Finally, our own decision in *Rider v. Lynch*, 42 *N. J.* 465 (1964) is to the same effect. Although the main thrust of the opinion is directed to a different issue, yet the facts presented are substantially the same as we have here and the opinion includes a holding of no liability on the part of the carrier on the ground that the identical exclusionary provision applied. In that case a serviceman, Gerald Day, left his automobile with his fiancee, Tomiko Lynch, for her regular use while he was away in the service. Tomiko, a Japanese girl who did not speak or understand English well, sought appropriate coverage to protect against liability arising from the use of the car. The insurance agent, however, did not issue a policy which afforded the protection she sought. Instead he issued a standard family automobile policy in which the named insured was Tomiko Lynch. Under this policy the insurer agreed to pay on behalf of the insured all sums the insured would become legally obligated to pay as damages because of bodily injury sustained by any person "arising out of the ownership, maintenance or use of the owned automobile or

any non-owned automobile." The term "non-owned automobile" was defined as "an automobile * * * not owned or furnished for the regular use of either the named insured or any relative." Tomiko's father was involved in an accident while driving the car. This Court specifically held that the automobile was furnished for the regular use of Tomiko Lynch and that therefore it did not qualify for coverage under the "non-owned automobile" clause, and that therefore Tomiko's father, Vernon Lynch, the driver of the car, did not come within the protection of the policy at the time of the accident. 42 *N. J.* at 474. The judgment in favor of the insurance company was thus affirmed because the automobile was furnished for the regular use of Tomiko Lynch, and accordingly, although she was not driving at the time of the accident, the exclusion controlled.

It having been clearly established to my satisfaction that the DeSoto was furnished for the regular use of the father, Generoso DiOrio, I would not reach the question as to whether it was also furnished for the regular use of the son, Gennaro DiOrio.

I would affirm the judgment of the Appellate Division for the reasons set forth above.

PROCTOR, J., joins in this dissent.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, HALL and SULLIVAN—4.

*For affirmance*—Justices PROCTOR and MOUNTAIN—2.